## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| **LINDA SARSOUR;** ) | |
| **RASHIDA TLAIB;** ) | |
| **ZAHRA BILLOO;** ) | **Case No.**   1:17-cv-00120 |
| **NIHAD AWAD;** ) | **Hon.** |
| **COREY SAYLOR;** ) | |
| **DAWUD WALID;** ) | |
| **BASIM ELKARRA;** ) | |
| **HUSSAM AYLOUSH;** ) | **COMPLAINT FOR** |
| **HASSAN SHIBLY;** ) | **INJUNCTIVE AND DECLARATORY** |
| **ALIA SALEM;** ) | **RELIEF AND JURY DEMAND** |
| **ADAM SOLTANI;** ) | |
| **IMRAN SIDDIQI;** ) | |
| **JULIA SHEARSON;** ) | |
| **NAMIRA ISLAM;** ) | |
| **KAREN DABDOUB;** ) | |
| **JOHN DOE NO. 1;** ) | |
| **JOHN DOE NO. 2;** ) | |
| **JOHN DOE NO. 3;** ) | |
| **JOHN DOE NO. 4;** ) | |
| **JOHN DOE NO. 5;** ) | |
| **JOHN DOE NO. 6;** ) | |
| **JOHN DOE NO. 7;** ) | |
| **JOHN DOE NO. 8;** ) | |
| **JOHN DOE NO. 9;** ) | |
| **JOHN DOE NO. 10;** ) | |
| **JANE DOE NO. 1;** and, ) | |
| **JANE DOE NO. 2;** ) | |
| ) | |
|     Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| **DONALD J. TRUMP**, President of the United ) | |
| States of America; in his official capacity ) | |
| ) | |
| **JOHN F. KELLY**, Secretary of the Department ) | |
| of Homeland Security; in his official capacity; ) | |
| ) | |
| **U.S. DEPARTMENT OF STATE**; and, ) | |
| ) | |
| **DIRECTOR OF NATIONAL INTELLIGENCE;** ) | |
| ) | |
|     Defendants. ) | |

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

Plaintiffs, for themselves and on behalf of all others similarly situated, by and through their attorneys, Council on American-Islamic Relations ("CAIR"), The Law Office of Gadeir Abbas, and Akeel and Valentine, PLC, state as follows:

## Introduction

1.      The vulgar animosity that accounts for the existence of Executive Order entitled "Protecting the Nation from Terrorist Attacks by Foreign Nationals" (hereinafter the "Muslim Exclusion Order"), issued the same day of this action, is plain to see, and the absence of the words Islam or Muslim does nothing to obscure it.

2.      In fact, the Executive Order has already gained national and international media attention and nationwide protests, and has been dubbed uniformly as the "Muslim Ban" because its apparent and true purpose and underlying motive—which is to ban Muslims from certain Muslim-majority countries (Iraq, Iran, Libya, Somalia, Sudan, Syria and Yemen) (hereinafter the "Muslim majority countries")—has been broadcast to the general public by the Trump Administration.

3.      Less known is the second and equally central purpose of the Muslim Exclusion Order – to initiate the mass expulsion of immigrant and nonimmigrant Muslims lawfully residing in the United States by denying them the ability to renew their lawful status or receive immigration benefits afforded to them under the Immigration and Nationality Act of 1965 ("INA") – based solely on their religious beliefs.

4.      Many Muslims lawfully in the United States that are targeted by the Muslim Exclusion Order, including some of the John Doe and John Doe Plaintiffs, will be forced – as a

result of the Muslim Exclusion Order – to return to their home countries, where they will likely face persecution, torture and even execution, simply because they are Muslim.

5.      The malice that gave rise to the Muslim Exclusion Order first emerged on December 7, 2015, when President Trump issued a campaign promise to implement, if elected, "a total and complete shutdown of Muslims entering the United States until our country's representatives can figure out what is going on."

6.      The Muslim Exclusion Order is the fulfillment of President Trump's longstanding promise and boasted intent to enact a federal policy that overtly discriminates against Muslims and officially broadcasts a message that the federal government disfavors the religion of Islam, preferring all other religions instead.

7.      The Muslim Exclusion Order is both broader in some ways and narrower in others than the policy Defendant Trump proposed on December 7, 2015.  The Muslim Exclusion Order is broader insofar as it denies immigration benefits to those who, like some of the immigrant and nonimmigrant Plaintiffs, followed the rules and entered and are now lawfully present in the United States.

8.      The Muslim Exclusion Order is also narrower than originally proposed, because it applies only to a subset of Muslims rather than all Muslims.  This, however, does not cure the policy of its constitutional infirmity.  While the Muslim Exclusion Order does not apply to all Muslims, the policy ***only*** applies to Muslims.

9.      The text of the Muslim Exclusion Order implements an impermissible religious gerrymander that divides foreign nationals, even those lawfully present inside the United States, into favored and disfavored groups based on their faith.

10.    Likewise, the Muslim Exclusion Order also divides green card holders, lawfully present inside the United States, into favored and disfavored groups based on their faith.

11.    Because the history and text of the Muslim Exclusion Order reveal an illegal purpose and effect, Plaintiffs' claims must be sustained.

### Parties

12.    Plaintiff Linda Sarsour is an American Muslim residing in Kings County, New York.  Plaintiff Sarsour is a Palestinian activist and Executive Director of the Arab American Association of New York.  In 2016, she served as spokesperson for Presidential Candidate Senator Bernie Sanders, and was one of three national co-chairs for the 2017 Women's March held the day after the inauguration of Donald Trump as President of the United States. Plaintiff Sarsour has appeared in "*The Hijabi Monologues*" and has her own show, *The Linda Sarsour Show*.

13.    Plaintiff Rashida Tlaib is a Muslim American residing in Wayne County, Michigan.  Plaintiff Tlaib is a former Democratic member of the Michigan House of Representatives and an attorney at the Sugar Law Center for Economic and Social Justice. Upon her swearing in on January 1, 2009, Plaintiff Tlaib became the first Muslim-American woman to serve in the Michigan Legislature, and only the second Muslim woman in history to be elected to any state legislature in America.

14.    Plaintiff Zahra Billoo is a Muslim American residing in Santa Clara County, California.  Plaintiff Billoo is a civil rights attorney and the Executive Director of the Council on American-Islamic Relations, San Francisco Bay Area (CAIR-SFBA), a chapter of the nation's largest Muslim civil rights and civil liberties advocacy organization, and a prominent civil rights activist.  Plaintiff Billoo is frequently seen at mosques and universities facilitating

trainings and workshops as a part of CAIR's grassroots efforts to empower the American Muslim community and build bridges with allies on civil rights issues.

15.     Plaintiff Nihad Awad is a Muslim American residing in Washington County, D.C.   Plaintiff Awad is National Executive Director and co-founder of the Council on American-Islamic Relations (CAIR), the nation's largest Muslim civil rights and civil liberties advocacy organization, and a prominent civil rights activist.   As a national leader in the civil rights movement, Plaintiff Awad has led multiple campaigns to defend the rights of Muslims and to help Americans of other faiths better understand Islam. His work includes interfacing with the U.S. government, facilitating interfaith dialogue, speaking at conferences, conducting training and leadership seminars, and appearing in national and international media to discuss Islam and American Muslims.   Plaintiff Awad has testified before both Houses of the U.S. Congress on matters involving Muslims in America.   In 1997, he served on the White House Civil Rights Advisory Panel to the Commission on Safety and Security. In the 2000, 2004, 2008, and 2012 presidential elections, Plaintiff Awad was a key figure in creating the Muslim voting bloc.   In 2006, he traveled to Iraq on a humanitarian mission to appeal for the release of American journalist Jill Carrol who was kidnapped and later released in Iraq. In September, 2011, Plaintiff Awad traveled to Iran as part of an interfaith delegation to meet with the President of Iran to appeal for the release of two American hikers held by Iran.   In 2004, he was named one of National Journal's more than 100 Most Influential People in the United States whose ideas will help shape the debate over public policy issues for the next decade.   In 2009, he was named by a Georgetown University publication as one of the 500 most influential Muslims in the world. And in 2010, Arabian Business ranked him as 39th in the "Arabian Business Power 100" list, its annual listing of the most influential Arabs.

16.     Plaintiff Corey Saylor is a Muslim American residing in Fairfax County, Virginia.  Plaintiff Saylor is Director of the Department to Monitor and Combat Islamophobia at the Council on American-Islamic Relations (CAIR), the nation's largest Muslim civil rights and civil liberties advocacy organization, and a prominent civil rights activist.  Plaintiff Saylor is an expert on political communications, legislative advocacy, media relations and anti-Islam prejudice in the United States.  He is a regular voice on U.S. and international news outlets.  Plaintiff Saylor has also run successful advocacy campaigns against corporate giants such as Burger King and Bell Helicopter-Boeing when their actions or advertisements negatively impacted the American Muslim community.

17.     Plaintiff Dawud Walid is a Muslim American residing in Wayne County, Michigan.  Plaintiff Walid is the Executive Director of the Council on American-Islamic Relations, Michigan (CAIR-MI), a chapter of the nation's largest Muslim civil rights and civil liberties advocacy organization, and a prominent civil rights activist.  Plaintiff Walid has been interviewed and quoted in approximately 150 media outlets and has lectured at over 50 institutions of higher learning about Islam, interfaith dialogue and social justice.  Plaintiff Walid served in the United States Navy under honorable conditions earning two United States Navy & Marine Corp Achievement medals while deployed abroad.  He has also received awards of recognition from the city councils of Detroit and Hamtramck and from the Mayor of Lansing as well as a number of other religious and community organizations.

18.     Plaintiff Basim Elkarra is a Muslim American residing in Sacramento County, California.  Plaintiff Elkarra is the Executive Director of the Council on American-Islamic Relations, Sacramento Valley (CAIR-SAC), a chapter of the nation's largest Muslim civil rights and civil liberties advocacy organization, and a prominent civil rights activist.  Plaintiff

Elkarra is a former board member of the Sacramento chapter of the American Civil Liberties Union, and serves on the Executive Board of the California Democratic Party. He also serves on the City of Sacramento Community Police Commission.   In 2011, the United States Embassy in London sent Plaintiff Elkarra to England to meet young British Muslims as part of a strategy to promote civic engagement.

19.     Plaintiff Hussam Ayloush is a Muslim American residing in Riverside County, California.  Plaintiff Ayloush is the Executive Director of the Council on American-Islamic Relations, Los Angeles (CAIR-LA), a chapter of the nation's largest Muslim civil rights and civil liberties advocacy organization, and a prominent civil rights activist and community organizer.  Ayloush is a fourth-term elected Delegate to the California Democratic Party (CDP). He also serves on the board of the Muslim American Homeland Security Congress (MAHSC).

20.     Plaintiff Hassan Shibly is a Muslim American residing in Hillsborough County, Florida.  Plaintiff Shibly is the Chief Executive Director of the Council on American-Islamic Relations, Florida (CAIR-FL), a chapter of the nation's largest Muslim civil rights and civil liberties advocacy organization, and a prominent civil rights activist.  Plaintiff Shibly met with President Barack Obama and several high-ranking government officials regarding Islam and civil rights issues facing Muslims.  He also often serves as a consultant on Islam for, among other private entities, law enforcement and other government agencies.

21.     Plaintiff Alia Salem is a Muslim American residing in Dallas County, Texas. Plaintiff Salem is the Executive Director of the Council on American-Islamic Relations, Dallas/Fort Worth (CAIR-DFW), a chapter of the nation's largest Muslim civil rights and civil liberties advocacy organization, and a prominent civil rights activist working for social

justice, understanding and empowerment in her community.   Plaintiff Salem's work with CAIR-DFW has been featured on local, national and international media outlets.

22.     Plaintiff Adam Soltani is a Muslim American residing in Oklahoma County, Oklahoma.   Plaintiff Soltani is the Executive Director of the Council on American-Islamic Relations, Oklahoma (CAIR-OK), a chapter of the nation's largest Muslim civil rights and civil liberties advocacy organization, and a prominent civil rights activist.   Plaintiff Soltani currently serves as the chair of the Oklahoma Conference of Churches' Religions United Committee and planning committee member for OKC's Jewish-Muslim Film Institute. He is also a former member of the Oklahoma Democratic Party Religious Education Committee, former board member of the Interfaith Alliance of Oklahoma, and a former member of Islamic Society of Greater Oklahoma City Executive Committee.

23.     Plaintiff Imran Siddiqi is a Muslim American residing in Maricopa County, Arizona.   Plaintiff Siddiqi is the Executive Director of the Council on American-Islamic Relations, Oklahoma (CAIR-AZ), a chapter of the nation's largest Muslim civil rights and civil liberties advocacy organization.   Plaintiff Siddiqi is a writer and prominent civil rights activist.   He has written extensively on the subject of Islamophobia, Middle East Affairs, and issues affecting American Muslims.

24.     Plaintiff Julia Shearson is a Muslim American residing in Cuyahoga County, Ohio.   Plaintiff Shearson is the Executive Director of the Cleveland chapter of the Council on American-Islamic Relations, Ohio (CAIR-OH), a chapter of the nation's largest Muslim civil rights and civil liberties advocacy organization, and a prominent civil rights activist.   She has delivered hundreds of lectures and trainings on Islam and Muslims, civil and human rights, diversity, Islamophobia, and immigration justice.   She was recently honored together with

22 area women for her leadership, activism, and community service in an art exhibit entitled "Reflections: The Many Facets of Stephanie Tubbs Jones" installed at Cleveland Hopkins Airport in memory of the late Congresswoman Stephanie Tubbs Jones.  Before joining CAIR-OH, Shearson served in the field of education for over 10 years, teaching at Ohio University, Jewish Vocational Services in Boston and at the Summer School and Division of Continuing Education at Harvard University.

25.     Plaintiff Namira Islam is a Muslim American residing in Oakland County, Michigan.  Plaintiff Islam is the Co-Founder and Executive Director of the Muslim Anti-Racism Collaborative (MuslimARC), a faith-based human rights education organization which focuses on racial justice.  Plaintiff Islam has worked in the areas of prisoner rights, and on international law and war crimes at the United Nations in The Hague, Netherlands.

26.     Plaintiff Karen Dabdoub is a Muslim American residing in Hamilton County, Ohio.  Plaintiff Dabdoub is the Executive Director of the Cincinnati chapter of the Council on American-Islamic Relations, Ohio (CAIR-OH), a chapter of the nation's largest Muslim civil rights and civil liberties advocacy organization, and a prominent civil rights activist.  Plaintiff Dabdoub has served the community since 2006 as a commissioner with the Cincinnati Human Relations Commission and was the president of CHRC from 2009 - 2011. She is a founding member of Muslim Mothers Against Violence, a local group founded in 2005 by Muslim women to take a stand against violence, abroad and at home. She has been a member of the Martin Luther King Coalition of Cincinnati since 2006. She is a former member of the FBI Multi-Cultural Advisory Council and the Kentucky Commission on Human Rights Community Advisory Committee.  She was a member of Friends of Open House – Cincinnati Chapter, an international organization that worked to bring about peace and understanding

between Palestinians and Israelis. Plaintiff Dabdoub appears in the documentary "A Visit to a Mosque in America," an educational documentary, filmed locally, that has received national recognition and commendation.

27.     Plaintiff John Doe No. 1 is a lawful permanent resident and a Muslim of Syrian national origin residing in Oakland County, Michigan.  He is the Imam, or religious Muslim leader, of a religious congregation.  In the event that Plaintiff John Doe No. 1 exits the United States, he will be prevented from returning to his home and to his congregation despite his lawful permanent resident status, pursuant to the Muslim Exclusion Order, and based solely on his religious status as a Muslim and his Syrian national origin.  Accordingly, Plaintiff John Doe No. 1 is no longer able to travel outside the United States.  Moreover, Plaintiff John Doe No. 1 will be denied citizenship in the United States, pursuant to the Muslim Exclusion Order, based solely on his religious status as a Muslim and his Syrian national origin.

28.     Plaintiff John Doe No. 2 is a student and a Muslim of Somali national origin residing in the United States.  He is an F-1/Student visa holder.  In the event that Plaintiff John Doe No. 2 exits the United States, he will be prevented from returning to his home and continuing his education despite his lawful student visa status, pursuant to the Muslim Exclusion Order, and based solely on his religious status as a Muslim and his Somali national origin.  Accordingly, Plaintiff John Doe No. 2 is no longer able to travel outside the United States.  Moreover, Plaintiff John Doe No. 2 will not be allowed to pursue a path to citizenship in the United States, pursuant to the Muslim Exclusion Order, also based solely on his religious status as a Muslim and his Somali national origin.

29.     Plaintiff John Doe No. 3 is a student and a Muslim of Yemeni national origin residing in Wayne County, Michigan.  He is an F-1/Student visa holder.  In the event that

Plaintiff John Doe No. 3 exits the United States, he will be prevented from returning to his home and continuing his education despite his lawful student visa status, pursuant to the Muslim Exclusion Order, and based solely on his religious status as a Muslim and his Yemeni national origin.  Accordingly, Plaintiff John Doe No. 3 is no longer able to travel outside the United States.  Moreover, Plaintiff John Doe No. 3 will not be allowed to pursue a path to citizenship in the United States, pursuant to the Muslim Exclusion Order, also based solely on his religious status as a Muslim and his Yemeni national origin.

30.     Plaintiff John Doe No. 4 is an asylee and a Muslim of Syrian national origin, residing in Cook County, Illinois.  Plaintiff John Doe No. 4 fled for fear of his life and safety from Syria.  He will be eligible for lawful permanent residency in the United States, however will be prevented from obtaining lawful permanent residency based solely on his religious status as a Muslim and his Syrian national origin.  In the event that Plaintiff John Doe No. 4 exits the United States, he will be prevented from returning to the United States despite his lawful status, pursuant to the Muslim Exclusion Order, also based solely on his religious status as a Muslim and his Syrian national origin.  Moreover, Plaintiff John Doe No. 4 will no longer be eligible to renew his work authorization in the United States.  In the event Plaintiff John Doe No. 4 is denied reentry in the United States were he to travel outside of the United States, he will be forced to return to Syria where he is likely to be tortured or even executed.

31.     Plaintiff John Doe No. 5 is a lawful permanent resident and a Muslim of Sudanese national origin residing in Albany County, New York.  He is eligible for and filed for citizenship in the United States.  His application has been pending, however will be denied, pursuant to the Muslim Exclusion Order, based solely on his religious status as a Muslim and his Sudanese national origin.  Moreover, Plaintiff John Doe No. 5 filed a marriage petition for

his wife, which has already been pending for fourteen months.  His wife has Sudanese citizenship through her parents although she has never lived in Sudan.  Pursuant to the Muslim Exclusion Order, his wife will be denied a visa to enter the United States to be reunited with her husband based solely on his and his wife's religious status as Muslims and their Sudanese national origin.  Moreover, in the event that Plaintiff John Doe No. 5 exits the United States, he will be prevented from returning to his home in the United States.  Accordingly, Plaintiff John Doe No. 5 is also no longer able to travel outside the United States to be reunited with his wife.

32.     Plaintiff John Doe No. 6 is a Muslim American residing in Albany County, New York.  Plaintiff John Doe No. 6 filed a marriage petition for his wife, who is currently pregnant with their baby.  His application for her, however will be denied, pursuant to the Muslim Exclusion Order, based solely on his wife's religious status as a Muslim and her Sudanese national origin.  Pursuant to the Muslim Exclusion Order, John Doe No. 6 will be prevented from reunited with his wife and baby based solely on her religious status as a Muslim and her Sudanese national origin.

33.     Plaintiff John Doe No. 7 is a lawful permanent resident and a Muslim of Syrian national origin residing in Broward County, Florida.  He will be eligible for citizenship in the United States, his application will be denied, pursuant to the Muslim Exclusion Order, based solely on his religious status as a Muslim and his Syrian national origin.  Moreover, Plaintiff John Doe No. 7 is married to a United States Citizen.  In the event that Plaintiff John Doe No. 7 exits the United States, he will be prevented from returning to his home and to his wife in the United States.  Accordingly, Plaintiff John Doe No. 7 is also no longer able to travel outside the United States to be reunited with his wife or his family.

34.     Plaintiff John Doe No. 8 is a lawful permanent resident and a Muslim of Sudanese national origin residing in Phillips County, Missouri.  He will be eligible for citizenship in the United States, however his application will be denied, pursuant to the Muslim Exclusion Order, based solely on his religious status as a Muslim and his Sudanese national origin.  Moreover, Plaintiff John Doe No. 8 filed a marriage petition for his wife, which has already been pending for nearly a year.  Pursuant to the Muslim Exclusion Order, his wife, a Sudanese national, will be denied a visa to enter the United States to be reunited with her husband based solely on his and his wife's religious status as Muslims and their Sudanese national origin.  Moreover, in the event that Plaintiff John Doe No. 8 exits the United States, he will be prevented from returning to his home in the United States.  Accordingly, Plaintiff John Doe No. 8 is also no longer able to travel outside the United States to be reunited with his wife.

35.     Plaintiff John Doe No. 9 is a lawful permanent resident and a Muslim of Syrian national origin residing in the United States.  He will be eligible for citizenship in the United States, however his application will be denied, pursuant to the Muslim Exclusion Order, based solely on his religious status as a Muslim and his Syrian national origin.  In the event that Plaintiff John Doe No. 9 exits the United States, he will be prevented from returning to his home in the United States.  Moreover, Plaintiff John Doe No. 9 is one of few critical care physicians servicing an underserviced area in the United States.  In the event he is prevented from returning to the United States, the area he serves will be lacking an essential physician to provide critical care to a substantial population in the United States.

36.     Plaintiff John Doe No. 10 is a Muslim American and a dual national, both a United States citizen and Syrian national.  In the event that Plaintiff John Doe No. 10 exits the United States, he will be prevented from returning to his home in the United States.

37.     Plaintiff Jane Doe No. 1 is an asylee and a Muslim of Syrian national origin, residing in Wayne County, Michigan.  Plaintiff Jane Doe No. 1 fled for fear of her life and safety from Syria.  She is eligible for and filed for lawful permanent residency in the United States. Her application remains pending, however will be denied, pursuant to the Muslim Exclusion Order, based solely on her religious status as a Muslim and her Syrian national origin.  In the event that Plaintiff Jane Doe No. 1 exits the United States, she will be prevented from returning to the United States despite her lawful status, pursuant to the Muslim Exclusion Order, also based solely on her religious status as a Muslim and her Syrian national origin. Moreover, Plaintiff Jane Doe No. 1 will no longer be eligible to renew her work authorization in the United States also based solely on her religious status as a Muslim and her Syrian national origin.  In the event Plaintiff Jane Doe No. 1 is denied reentry in the United States were she to travel outside of the United States, she will be forced to return to Syria where she is likely to be tortured or even executed.

38.     Plaintiff Jane Doe No. 2 is an asylee and a Muslim of Syrian national origin, residing in Cook County, Illinois.  Plaintiff Jane Doe No. 2 fled for fear of her life and safety from Syria.  She will be eligible for lawful permanent residency in the United States, however will be prevented from obtaining lawful permanent residency based solely on her religious status as a Muslim and her Syrian national origin.  In the event that Plaintiff Jane Doe No. 2 exits the United States, she will be prevented from returning to the United States despite her lawful status, pursuant to the Muslim Exclusion Order, also based solely on her religious

14

status as a Muslim and her Syrian national origin.  Moreover, Plaintiff Jane Doe No. 2 will no longer be eligible to renew her work authorization in the United States.  In the event Plaintiff Jane Doe No. 2 is denied reentry in the United States were she to travel outside of the United States, she will be forced to return to Syria where she is likely to be tortured or even executed.

39.     Defendant Donald J. Trump is the current President of the United States of America.  Defendant Trump issued the Muslim Exclusion Order, which is the subject of this action.  Defendant Trump is being sued in his official capacity, only.

40.     Defendant John F. Kelly is the current Secretary of the U.S. Department of Homeland Security.  Defendant Kelly is responsible for implementing the Muslim Exclusion Order, which is the subject of this action.  Defendant Kelly is being sued in his official capacity, only.

41.     Defendant U.S. Department of State is responsible for issuing visas and implementing the Muslim Exclusion Order.  The Secretary of the U.S. Department of State position is currently vacant.

42.     Defendant Director of National Intelligence is responsible for implementing the Muslim Exclusion Order.  The Director of National Intelligence position is currently vacant.  Defendant Director of National Intelligence is being sued in his official capacity, only.

### **Jurisdiction and Venue**

43.     Under U.S. Const. Art. III §2, this Court has jurisdiction because the rights sought to be protected herein are secured by the United States Constitution.  Jurisdiction is proper pursuant to 28 U.S.C. § 1331, 5 U.S.C. § 702, 5 U.S.C. § 706, the United States Constitution, and federal common law.

44.     This action seeks damages pursuant to 28 U.S.C. § 1343(a)(4) and 28 U.S.C. § 1357.

45.     This action also seeks declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § § 2201-02, Rules 57 and 65 of the Federal Rules of Civil Procedure, and pursuant to the general, legal, and equitable powers of this Court.

46.     A substantial part of the unlawful acts alleged herein were committed within the jurisdiction of the United States District Court for the Eastern District of Virginia.

47.     Venue is proper under 42 U.S.C. § 1391(e) as to the Defendants because Defendants are officers or employees of the United States sued in their official capacity and because this judicial district is where a substantial part of the events or omissions giving rise to the claims occurred.

## **Factual Background**

### **President Trump's Unconstitutional Executive Order**
### **Banning Muslims from Entering the United States and Initiating Mass Expulsion of Immigrant and Nonimmigrant Muslims Lawfully Residing Within the United States**

48.     The Muslim Exclusion Order is the as-promised outcome of Defendant Trump's hateful, year-long campaign which was fueled, in significant part, by a desire to stigmatize Islam and Muslims.

49.     Defendant Trump has often repeated his bigoted views on Islam and Muslims in a variety of contexts—in print, on television, and via official campaign statements.  The Muslim Exclusion Order is the legal manifestation of those bigoted views.

50.     Defendant Trump's views on Islam are unequivocal.  On or about March 10, 2016, in an interview aired on CNN, President Trump declared that he thinks "Islam hates us."

51.     His statements regarding Islam and Muslims give rise to the inference that the Muslim Exclusion Order is motivated by a bare desire to inflict harm on this faith and those that belong to it.

52.     In addition to President Trump's statements regarding Islam and Muslims, the history of the Muslim Exclusion Order reveals its unlawful, discriminatory purpose.   On December 7, 2015, while campaigning, President Trump called for "a total and complete shutdown of Muslims entering the United States until our country's representatives can figure out what is going on."

53.     Defendant Trump's rationale for this proposal included sweeping condemnations of Islam, the second largest religion in the world with over 1.6 billion people. His condemnation incorrectly surmised that Islam's religious traditions, which he referred to as "Sharia", "authoriz[e] such atrocities as murder against non-believers who won't convert, beheadings and more unthinkable acts that pose great harm to Americans, especially women."

54.     Subsequent to his nomination as the Republican candidate for the presidency, Defendant Trump began using facially neutral language to describe his anti-Muslim policy. This neutral language suggested that a Trump administration would stop immigration "from any nation that has been compromised by terrorism."

55.     On or about July 24, 2016, however, Defendant Trump disclosed that the neutral language was simply a veneer intended to subdue the public controversy generated by his discriminatory plan.  To that end, in an interview on NBC, Defendant Trump stated the following: "People were so upset when I used the word Muslim.  Oh, you can't use the word Muslim…And I'm OK with that, because I'm talking territory instead of Muslim."

17

56.    In fact, On January 27, 2017, hours before signing the Muslim Ban, President Trump explained that his order was "going to help [persecuted Christians]".  His answer made clear that President Trump's intention in crafting the Muslim Ban was to treat foreign nationals in the seven identified countries differently based on their faith.

57.    On January 28, 2017, in an interview, Rudy Giuliani explained that after then-candidate Donald Trump announced his Muslim Ban—which explicitly prohibited Muslims from obtaining entry into the United States—Giuliani was asked to "show [Donald Trump] the right way to do [Muslim Ban] legally."  Giuliani then formed a commission to find a way to accomplish the Muslim Ban's scope without mentioning Islam or Muslims.

58.    Since the signing of the Muslim Exclusion Ban just two days ago, five district courts around the country issued stays.

59.    On January 28, 2017, Judge Brinkema in the Eastern District of Virginia issued a Temporary Restraining Order that forbade Defendants "from removing petitioners— lawful permanent residents at Dulles International Airport—for a period of 7 days from the issuance of that Order, attached an exhibit.

60.    On the same day, the United States District Court of the Western District of Washington granted an emergency stay of removal that prohibits Defendants "from removing John Doe I and Joe Doe II from the United States."  That Order is also attached as an exhibit.

61.    Again on the same day, the United States District Court for the Eastern District of New York granted an emergency stay of removal, finding that the petitioners "have a strong likelihood of success in establishing that the removal of the petitioner and others

similarly situated violates their rights to Due Process and Equal Protection."  That Order is also attached as an exhibit.

62.     On January 29, 2017, the United States District Court for the District of Massachusetts granted a Temporary Restraining Order against parts of the Muslim Ban, finding that the petitioners had established a "strong likelihood of success in establishing that the detention and/or removal of the petitioners and others similarly situated would violate their rights to Due Process and Equal Protection."  That Order is also attached as an exhibit.

63.     That same day, the United States District Court for the Central District of California prohibited the defendants "from barring Petitioner's return to the United States" because he had "demonstrated a strong likelihood of success in establishing that removal violates the Establishment Clause" as well as other constitutional and statutory provisions. That Order is also attached as an exhibit.

64.     While the Muslim Exclusion Order states that it suspends entry into the United States immigrants and nonimmigrants from the Muslim-majority countries for 90 days, at the conclusion of the first 60 days, the Secretary of Homeland Security and Secretary of State will submit a list of countries for a permanent ban on entry.

65.     The language of the Muslim Exclusion Order corroborates President Trump's admission that the facially neutral language is simply a pretext.  The Order does not exclude persons based on where they are from but on what religion they belong to.  Paragraph F suspends all grounds for persecution and allows only one: "religious-based persecution." However, religious-based persecution can only be claimed by individuals who are not

Muslim.  Thus, the Muslim Exclusion Order constitutes a religious gerrymander—drawing distinctions that exclude the disfavored group—Muslims—while leaving others untouched.

66.     Plaintiffs have suffered and will continue to suffer an ongoing concrete harm and psychological consequences since the initial announcement of the "Muslim Ban" as a result of the Defendants' condemnation of their religion and the endorsement of all religions over their own.  *Catholic League for Religious & Civ. Rights v. City & County of San Francisco*, 567 F.3d 595 (9th Cir. 2009).

### COUNT I
### VIOLATION OF THE FIRST AMENDMENT
### TO THE UNITED STATES CONSTITUTION
### (Establishment Clause)

### (On behalf of all Plaintiffs)

67.     The foregoing allegations are realleged and incorporated herein.

68.     Defendants' unique application of the Muslim Exclusion Order to Muslims, insofar as it (1) suspends entry of Muslim immigrants and Muslim nonimmigrants originating from the Muslim-majority countries from entering the United States, (2) prohibits Muslim immigrants and Muslim nonimmigrants originating from the Muslim-majority countries and who reside lawfully in the United States from engaging in international travel and reentering the United States, (3) prohibits Muslim immigrants and Muslim nonimmigrants originating from the Muslim-majority countries and who reside lawfully in the United States from renewing their lawful immigrant or nonimmigrant status, (4) prohibits Muslim immigrants and Muslim nonimmigrants originating from same the Muslim-majority countries from applying for any immigration benefit, including immigration benefits afforded under the INA and international human rights laws such as

political asylum, (5) allows an exception only to non-United States Citizens ("non-USCs") originating from the Muslim-majority countries who are not Muslim to claim religious persecution and gain entry into the United States, and (6) denying a religious persecution exception to non-USCs originating from the Muslim-majority countries who are Muslim in order to gain entry into the United States, treats Islam on less than equal terms with other religious and non-religious groups, thereby creating a denominational preference against Islam as a religion.

69.    Defendants have deprived and continue to deprive Plaintiffs and similarly situated Muslims originating from the Muslim-majority countries their right to be free from religious discrimination in violation of the Establishment Clause to the First Amendment to the United States Constitution by signing a Muslim Exclusion Order whose purpose and effect is to discriminate on the basis of religion.

70.    President Trump's Muslim Exclusion Order imposes upon Islam—the religion to which all of the Plaintiffs belong—the stigma of government disfavor.  This condemnation, which has been cast to the general public pursuant to the Muslim Exclusion Order, signals to Plaintiffs' fellow citizens that their faith is uniquely threatening and dangerous insofar as it is the only religion singled out for disfavored treatment.

71.    Plaintiffs have suffered and will continue to suffer an ongoing concrete harm and psychological consequences since the initial announcement of the "Muslim Ban" as a result of the Defendants' condemnation of their religion and the endorsement of all religions over their own.  *Catholic League for Religious & Civ. Rights v. City & County of San Francisco*, 567 F.3d 595 (9th Cir. 2009).

72.     Defendants' unlawful actions caused Plaintiffs and similarly situated Muslims harm, and accordingly they are entitled to injunctive and declaratory relief, in addition to all such other relief this Court deems just and proper including costs and attorneys' fees in this action.

73.     Plaintiffs are entitled to declaratory relief, and the issuance of a preliminary and permanent injunction in the form described in the Prayer for Relief below.

WHEREFORE, Plaintiffs request this Honorable Court grant declaratory and injunctive relief in the form described in the Prayer for Relief below, plus all such other relief this Court deems just and proper including costs and attorneys' fees incurred in this action.

## COUNT II
## VIOLATION OF THE FIRST AMENDMENT
## TO THE UNITED STATES CONSTITUTION
## (Free Exercise)

### (On behalf of the John Doe and Jane Doe Plaintiffs)

74.     The foregoing allegations are realleged and incorporated herein.

75.     Defendants' unique application of the Muslim Exclusion Order to Muslims, insofar as it prohibits the John and Jane Doe Plaintiffs and other similarly situated non-USC Muslims originating from the Muslim-majority countries, (1) who are lawfully residing in the United States from engaging in international travel and subsequently reentering the United States in order to return to their homes, (2) who are lawfully residing in the United States from renewing their lawful immigrant or nonimmigrant status, and (3) who are either lawfully residing inside the United States or outside the United States from applying for immigration benefits afforded under the Immigration and Nationality Act of 1965 ("INA")

and international human rights laws such as political asylum, has deprived and continues to deprive them their right to free exercise of religion as secured by the First Amendment to the United States Constitution, by discriminating against them based on their religious beliefs and by substantially burdening their right to freely exercise their religious faith.

76.    Defendants' above-described unlawful actions directly infringe upon or substantially burden the First Amendment rights to free exercise of religion as guaranteed by the United States Constitution of the John and Jane Doe Plaintiffs and other similarly situated non-USC Muslims originating from the Muslim-majority countries by discriminating against them based on their religious beliefs and by substantially burdening their right to freely exercise their religious faith.

77.    Defendants' above-described unlawful actions that mandate or permit the above-described treatment of the John and Jane Doe Plaintiffs and other similarly situated non-USC Muslims originating from the Muslim-majority countries, constitute a substantial burden on their First Amendment rights to free exercise of religion, an adverse action against them motivated by their religious beliefs and practices, and an action that targets religious conduct for distinctive treatment.

78.    Defendants' above-described unlawful actions that mandate or permit the above-described treatment of the John and Jane Doe Plaintiffs and other similarly situated non-USC Muslims originating from the Muslim-majority countries would deter an individual of ordinary firmness from openly exercising his/her right to practice his/her religion and may cause that individual to abandon his faith.

79.    Defendants' actions also not narrowly tailored insofar as they are entirely and demonstrably ineffectual and obvious alternatives exist.

80.     Imposition of such a burden is not in furtherance of a compelling government interest nor is it the least restrictive means of furthering any governmental interest, compelling or otherwise.

81.     Plaintiffs have suffered and will continue to suffer an ongoing concrete harm and psychological consequences since the initial announcement of the "Muslim Ban" as a result of the Defendants' condemnation of their religion and the endorsement of all religions over their own.  *Catholic League for Religious & Civ. Rights v. City & County of San Francisco*, 567 F.3d 595 (9th Cir. 2009).

82.     Defendants' unlawful actions caused the John and Jane Doe Plaintiffs and other similarly situated non-USC Muslims originating from the Muslim-majority countries, and accordingly they are entitled to injunctive and declaratory relief, in addition to all such other relief this Court deems just and proper including costs and attorneys' fees in this action.

83.     The John and Jane Doe Plaintiffs are entitled to declaratory relief, and the issuance of a preliminary and permanent injunction in the form described in the Prayer for Relief below.

WHEREFORE, Plaintiffs request this Honorable Court grant declaratory and injunctive relief in the form described in the Prayer for Relief below, plus all such other relief this Court deems just and proper including costs and attorneys' fees incurred in this action.

**COUNT III**
**VIOLATION OF THE FIFTH AMENDMENT**
**TO THE UNITED STATES CONSTITUTION**
**(Jurisdiction under 28 U.S.C. § 1331 and 5 U.S.C. § 702)**
**(Equal Protection)**

**(On behalf of the John Doe and Jane Doe Plaintiffs)**

84. The foregoing allegations are realleged and incorporated herein.

85. Defendants' unique application of the Muslim Exclusion Order to Muslims, insofar as it prohibits the John and Jane Doe Plaintiffs and other similarly situated non-USC Muslims originating from the Muslim-majority countries, (1) who are residing lawfully in the United States from engaging in international travel and subsequently reentering the United States in order to return to their homes, (2) who are residing lawfully in the United States from renewing their lawful immigrant or nonimmigrant status, and (3) who are either residing lawfully inside the United States or outside the United States from applying for immigration benefits afforded under the Immigration and Nationality Act of 1965 ("INA") and international human rights laws such as political asylum, without a constitutionally adequate legal mechanism, are discriminatory and constitute an action that targets religious conduct for distinctive treatment.

86. By preventing the John and Jane Doe Plaintiffs and other similarly situated non-USC Muslims originating from the Muslim-majority countries lawfully residing in the United States from engaging in international travel and returning home in the United States, and/or applying for immigration benefits afforded to them under the Immigration and Nationality Act of 1965 ("INA") and international human rights law such as political asylum, Defendants have treated them like second-class citizens.

87.     Moreover, non-USCs originating from the Muslim-majority countries who seek lawful entry into the United States or that leave the country and claim religious persecution upon their return, and who *are not* Muslim, will be permitted to enter the United States pursuant to the Muslim Exclusion Order.

88.     On the other hand, non-USC Muslims originating from the Muslim-majority countries who seek lawful entry into the United States or that leave the country and claim religious persecution upon their return, and who *are* Muslim will not be permitted to enter the United States pursuant to the Muslim Exclusion Order.

89.     Defendants' above-described actions are motivated by the religious status of the John and Jane Doe Plaintiffs and other similarly situated non-USC Muslims originating from the Muslim-majority countries and on the basis of their constitutionally-protected free exercise of religion.

90.     Defendants' actions lack a compelling interest insofar as their true purpose is to ban Muslims originating from the Muslim-majority countries from entering the United States and to initiate the mass expulsion of non-USC Muslims lawfully residing in the United States by denying them the ability to renew their lawful status or receive immigration benefits afforded to them under the INA based solely on their religious beliefs.

91.     Defendants' above-described actions have a discriminatory effect upon and disparately impact the John and Jane Doe Plaintiffs and other similarly situated non-USC Muslims originating from the Muslim-majority countries, and not non-USCs of other faiths originating from the same Muslim-majority countries.

92.     Defendants' actions also not narrowly tailored insofar as they are entirely and demonstrably ineffectual and obvious alternatives exist.

93.     Defendants' above-described actions do not serve a compelling state interest or a legitimate or public purpose, nor are they the least restrictive means or narrowly tailored to achieve any such interest.

94.     Plaintiffs have suffered a concrete harm and psychological consequences as a result of the Defendants' condemnation of their religion and the endorsement of all religions over their own.  *Catholic League for Religious & Civ. Rights v. City & County of San Francisco*, 567 F.3d 595 (9th Cir. 2009).

95.     Defendants' unlawful actions caused the John and Jane Doe Plaintiffs and other similarly situated non-USC Muslims originating from the Muslim-majority countries harm, and accordingly they are entitled to injunctive and declaratory relief, in addition to all such other relief this Court deems just and proper including costs and attorneys' fees in this action.

96.     The John and Jane Doe Plaintiffs are entitled to declaratory relief, and the issuance of a preliminary and permanent injunction in the form described in the Prayer for Relief below.

WHEREFORE, Plaintiffs request this Honorable Court grant declaratory and injunctive relief in the form described in the Prayer for Relief below, plus all such other relief this Court deems just and proper including costs and attorneys' fees incurred in this action.

## COUNT IV
## UNLAWFUL AGENCY ACTION IN VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. §§ 702, 706
### (Jurisdiction under 28 U.S.C. § 1331 and 5 U.S.C. § 702)

### (On behalf of all Plaintiffs)

97.     The foregoing allegations are realleged and incorporated herein.

98.     Defendants' unique application of the Muslim Exclusion Order to Muslims, insofar as it (1) suspends entry of non-USC Muslims originating from the Muslim-majority countries from entering the United States, (2) prohibits non-USC Muslims originating from the Muslim-majority countries lawfully residing in the United States from engaging in international travel and reentering the United States, (3) prohibits non-USC Muslims originating from the Muslim-majority countries lawfully residing in the United States from renewing their lawful immigrant or nonimmigrant status, (4) prohibits non-USC Muslims originating from the Muslim-majority countries from applying for any immigration benefit, including immigration benefits afforded under the INA and international human rights laws such as political asylum, (5) allows an exception only to non-USCs originating from the Muslim-majority countries who are not Muslim to claim religious persecution and gain entry into the United States, and (6) denying a religious persecution exception to non-USCs originating from the Muslim-majority countries who are Muslim in order to gain entry into the United States, treats Islam on less than equal terms with other religious and non-religious groups, should be set aside as unlawful pursuant to 5 U.S.C. § 706.

99.     Defendants' actions as described above are arbitrary and capricious, shock the conscience, violate the decencies of civilized conduct, are so brutal and offensive that they do not comport with the traditional ideas of fair play and decency, lack even a rational

relationship to any legitimate government interest, and have substantially burdened and unduly deprived Plaintiffs and similarly situated Muslims their constitutionally protected rights, including their right to be free from discrimination on the basis of religion, the right to be free from condemnation by the government on the basis of their religion, the right to be free from being singled out by the government for disfavored treatment on the basis of their religion, liberty interests in engaging in international travel and returning home in the United States, their international human rights, their right to free exercise of religion, their rights to freedom from false stigmatization and nonattainder, and should be set aside as unlawful pursuant to 5 U.S.C. § 706.

100.   Defendants' above-described unlawful actions that mandate or permit the above-described treatment of the John and Jane Doe Plaintiffs and other similarly situated non-USC Muslims originating from the Muslim-majority countries, constitute a substantial burden on their First Amendment rights to free exercise of religion, an adverse action against them motivated by their religious beliefs and practices, and an action that targets religious conduct for distinctive treatment, and should be set aside as unlawful pursuant to 5 U.S.C. § 706.

101.   Defendants' above-described unlawful actions that mandate or permit the above-described treatment of the John and Jane Doe Plaintiffs and other similarly situated non-USC Muslims originating from the Muslim-majority countries would deter an individual of ordinary firmness from openly exercising his/her right to practice his/her religion and may cause that individual to abandon his faith, and should be set aside as unlawful pursuant to 5 U.S.C. § 706.

102.    By preventing the John and Jane Doe Plaintiffs and other similarly situated non-USC Muslims originating from the Muslim-majority countries lawfully residing in the United States from engaging in international travel and returning home in the United States, and/or applying for immigration benefits afforded under the Immigration and Nationality Act of 1965 ("INA") and international human rights laws such as political asylum, Defendants have treated them like second-class citizens, and should be set aside as unlawful pursuant to 5 U.S.C. § 706.

103.    Moreover, non-USCs originating from the Muslim-majority countries who seek lawful entry into the United States or that leave the country and claim religious persecution upon their return, and who ***are not*** Muslim, will be permitted to enter the United States pursuant to the Muslim Exclusion Order, and should be set aside as unlawful pursuant to 5 U.S.C. § 706.

104.    On the other hand, non-USCs originating from the Muslim-majority countries who seek lawful entry into the United States or that leave the country and claim religious persecution upon their return, and who ***are*** Muslim, will not be permitted to enter the United States pursuant to the Muslim Exclusion Order, and should be set aside as unlawful pursuant to 5 U.S.C. § 706.

105.    Defendants' above-described conduct was prompted or substantially caused by Plaintiffs' and such other similarly situated Muslims' religious identity on the basis of their constitutionally-protected free exercise of religion, and should be set aside as unlawful pursuant to 5 U.S.C. § 706.

106.    Defendants have deprived and continue to deprive Plaintiffs and similarly situated Muslims their right to be free from religious discrimination in violation of the

Establishment Clause to the First Amendment to the United States Constitution by issuing a Muslim Exclusion Order whose purpose and effect is to discriminate on the basis of religion, and should be set aside as unlawful pursuant to 5 U.S.C. § 706.

107.   President Trump's Muslim Exclusion Order imposes upon Islam—the religion to which all of the Plaintiffs belong—the stigma of government disfavor.  This condemnation, which has been broadcast to the general public pursuant to the Muslim Exclusion Order, signals to Plaintiffs' fellow citizens that their faith is uniquely threatening and dangerous insofar as it is the only religion singled out for disfavored treatment, and should be set aside as unlawful pursuant to 5 U.S.C. § 706.

108.   Defendants' actions also not narrowly tailored insofar as they are entirely and demonstrably ineffectual and obvious alternatives exist, and should be set aside as unlawful pursuant to 5 U.S.C. § 706.

109.   Defendants' actions lack a compelling interest insofar as their true purpose is to ban Muslims originating from these Muslim-majority countries from entering the United States and to initiate the mass expulsion of non-USC Muslims lawfully residing in the United States by denying them the ability to renew their lawful status or receive immigration benefits afforded to them under the INA based solely on their religious beliefs, and should be set aside as unlawful pursuant to 5 U.S.C. § 706.

110.   Imposition of such a burden is not in furtherance of a compelling government interest nor is it the least restrictive means of furthering any governmental interest, compelling or otherwise, and should be set aside as unlawful pursuant to 5 U.S.C. § 706.

111.   Defendants' above-described actions have a discriminatory effect upon and have disparately impacted the John and Jane Doe Plaintiffs and similarly situated non-USC

Muslims originating from the Muslim-majority countries, and not non-USCs of other faiths, and should be set aside as unlawful pursuant to 5 U.S.C. § 706.

112.   Plaintiffs have suffered and will continue to suffer an ongoing concrete harm and psychological consequences since the initial announcement of the "Muslim Ban" as a result of the Defendants' condemnation of their religion and the endorsement of all religions over their own. *Catholic League for Religious & Civ. Rights v. City & County of San Francisco*, 567 F.3d 595 (9th Cir. 2009).

113.   Defendants' unlawful actions caused Plaintiffs and similarly situated Muslims harm, and accordingly they are entitled to injunctive and declaratory relief, in addition to all such other relief this Court deems just and proper including costs and attorneys' fees in this action.

114.   Plaintiffs are entitled to declaratory relief, and the issuance of a preliminary and permanent injunction in the form described in the Prayer for Relief below.

WHEREFORE, Plaintiffs request this Honorable Court grant declaratory and injunctive relief in the form described in the Prayer for Relief below, plus all such other relief this Court deems just and proper including costs and attorneys' fees incurred in this action.

### Prayer for Relief

WHEREFORE, Plaintiffs respectfully requests:

1.   A speedy hearing of this action under Rule 57 of the Federal Rules of Civil Procedure;

2.   A declaratory judgment that Defendants' policies, practices, and customs violate the Fifth Amendment to the United States Constitution;

3.      An injunction that requires Defendants to remedy the constitutional violations

identified above, including prohibiting Defendants from engaging in the following:

(1) suspending entry of individuals with dual nationality, including American citizens, whose second nationality is from the Muslim-majority countries, from entering the United States, pursuant to the unconstitutional terms specified in the Muslim Exclusion Order;

(2) suspending entry of non-USCs originating from the Muslim-majority countries from entering the United States, pursuant to the unconstitutional terms specified in the Muslim Exclusion Order;

(3) prohibiting non-USCs originating from the Muslim-majority countries and who lawfully reside in the United States from engaging in international travel and reentering the United States, pursuant to the unconstitutional terms specified in the Muslim Exclusion Order;

(4) prohibiting non-USCs originating from the Muslim-majority countries and who lawfully reside in the United States from renewing their lawful immigrant or nonimmigrant status, pursuant to the unconstitutional terms specified in the Muslim Exclusion Order;

(5) prohibiting non-USCs originating from these Muslims countries from applying for any immigration benefit, including political asylum, under the Immigration and Nationality Act of 1965 ("INA"), pursuant to the unconstitutional terms specified in the Muslim Exclusion Order;

(6) allowing an exception only to non-USCs who are not Muslim to claim religious persecution and gain entry into the United States, pursuant to the unconstitutional terms specified in the Muslim Exclusion Order; and

(7) denying an exception to non-USCs who are Muslim in order to gain entry into the United States, pursuant to the unconstitutional terms specified in the Muslim Exclusion Order;

4.      A trial by jury;

5.   An award of attorneys' fees, costs, and expenses of all litigation, pursuant to 28 U.S.C. § 2412; and,

6.   Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

NOW COME Plaintiffs, by and through their undersigned counsel, and hereby demand trial by jury of the above-referenced causes of action.

Respectfully submitted,

THE LAW OFFICE OF GADEIR ABBAS

BY:  /s/ Gadeir Abbas
GADEIR I. ABBAS
Attorney for Plaintiff
1155 F Street NW, Suite 1050
Washington, D.C. 20004
Telephone: (720) 251-0425
Fax: (720) 251-0425
Email: gadeir.abbas@gmail.com

*Licensed in Virginia, not in D.C.*
*Practice limited to federal matters*

COUNCIL ON AMERICAN-ISLAMIC RELATIONS

BY:     /s/ Lena Masri
LENA F. MASRI (P73461)
Attorney for Plaintiff
National Litigation Director
353 New Jersey Ave, SE
Washington, DC 20003
Phone: (202) 488-8787

AKEEL & VALENTINE, PLLC

BY:      /s/ Shereef Akeel
SHEREEF H. AKEEL (P54345)
Attorney for Plaintiffs
888 W. Big Beaver Rd., Ste. 910
Troy, MI 48084
Phone: (248) 269-9595
shereef@akeelvalentine.com

Dated: January 30, 2017