## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA

| | | |
|---|---|---|
| **LINDA SARSOUR;** | ) | |
| **RASHIDA TLAIB;** | ) | |
| **ZAHRA BILLOO;** | ) | **Case No. 17-cv-00120** |
| **NIHAD AWAD;** | ) | **Hon. Anthony J. Trenga** |
| **COREY SAYLOR;** | ) | |
| **DAWUD WALID;** | ) | |
| **BASIM ELKARRA;** | ) | |
| **HUSSAM AYLOUSH;** | ) | **AMENDED COMPLAINT FOR** |
| **HASSAN SHIBLY;** | ) | **INJUNCTIVE AND DECLARATORY** |
| **ALIA SALEM;** | ) | **RELIEF AND JURY DEMAND** |
| **ADAM SOLTANI;** | ) | |
| **IMRAN SIDDIQI;** | ) | |
| **JULIA SHEARSON;** | ) | |
| **NAMIRA ISLAM;** | ) | |
| **KAREN DABDOUB;** | ) | |
| **JIM SUES;** | ) | |
| **HANIF MOHEBI;** | ) | |
| **JAYLANI HUSSEIN;** | ) | |
| **JOHN ROBBINS;** | ) | |
| **JOHN DOE NO. 1;** | ) | |
| **JOHN DOE NO. 2;** | ) | |
| **JOHN DOE NO. 3;** | ) | |
| **JOHN DOE NO. 4;** | ) | |
| **JOHN DOE NO. 5;** | ) | |
| **JOHN DOE NO. 6;** | ) | |
| **JOHN DOE NO. 7;** | ) | |
| **JOHN DOE NO. 8;** | ) | |
| **JOHN DOE NO. 9;** | ) | |
| **JOHN DOE NO. 10;** | ) | |
| **JOHN DOE NO. 11;** | ) | |
| **JANE DOE NO. 1;** and, | ) | |
| **JANE DOE NO. 2;** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **DONALD J. TRUMP**, President of the United | ) | |
| States of America; in his official capacity | ) | |
| | ) | |
| **JOHN F. KELLY**, Secretary of the Department | ) | |
| of Homeland Security; in his official capacity; | ) | |
| | ) | |

1

**U.S. DEPARTMENT OF STATE**; and,                    )
                                                      )
**DIRECTOR OF NATIONAL INTELLIGENCE;**                )
                                                      )
   Defendants.                                        )
_____/

### AMENDED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

Plaintiffs, for themselves and on behalf of all others similarly situated, by and through their attorneys, Council on American-Islamic Relations ("CAIR"), The Law Office of Gadeir Abbas, and Akeel and Valentine, PLC, state as follows:

### Introduction

1.      The vulgar animosity that accounts for the existence of both Executive Order 13769 entitled "Protecting the Nation from Terrorist Attacks by Foreign Nationals" (hereinafter the "First Muslim Ban"), issued on January 27, 2017, and Executive Order 13780 entitled "Protecting the Nation from Foreign Terrorist Entry into the United States," issued on March 6, 2017 (hereinafter "the Revised Order") is plain to see, and the absence of the words Islam or Muslim did nothing to obscure it.

2.      In fact, the First Muslim Ban gained national and international media attention and nationwide protests, and was dubbed uniformly as the "Muslim Ban" because its apparent and true purpose and underlying motive—which was to ban Muslims from certain Predominantly Muslim Countries (Iraq, Iran, Libya, Somalia, Sudan, Syria and Yemen) (hereinafter the "Predominantly Muslim Countries")—has been broadcast to the general public by the Trump Administration.

3.      Less known was the second and equally central purpose of the First Muslim Ban – to initiate the mass expulsion of immigrant and nonimmigrant Muslims lawfully residing in the United States by denying them the ability to renew their lawful status or

receive immigration benefits afforded to them under the Immigration and Nationality Act of 1965 ("INA") – based solely on their religious beliefs and national origin.

4.      Many Muslims lawfully in the United States that were targeted by the First Muslim Ban, including some of the John Doe and John Doe Plaintiffs, would have been forced – as a result of the First Muslim Ban – to return to their home countries, where they would likely face persecution, torture and even execution, simply because they are Muslim.

5.      The malice that gave rise to the First Muslim Ban first emerged on December 7, 2015, when Defendant Trump issued a campaign promise to implement, if elected, "Donald J. Trump is calling for a total and complete shutdown of Muslims entering the United States until our country's representatives can figure out what is going on."  That promise remains on his campaign website.[1]

6.      Defendant Trump went on to explain that, "Without looking at the various polling data, it is obvious to anybody the hatred is beyond comprehension. Where this hatred comes from and why we will have to determine. Until we are able to determine and understand this problem and the dangerous threat it poses, our country cannot be the victims of horrendous attacks by people that believe only in Jihad, and have no sense of reason or respect for human life. If I win the election for President, we are going to Make America Great Again."

7.      The First Muslim Ban was the fulfillment of Defendant Trump's longstanding promise and boasted intent to enact a federal policy that overtly discriminates against

---

[1] Donald J. Trump Statement on Preventing Muslim Immigration, December 7, 2015, available at: https://www.donaldjtrump.com/press-releases/donald-j.-trump-statement-on-preventing-muslim-immigration

Muslims and officially broadcasts a message that the federal government disfavors the religion of Islam, preferring all other religions instead.

8.      The First Muslim Ban was both broader in some ways and narrower in others than the policy Defendant Trump proposed on December 7, 2015.  The First Muslim Ban was broader insofar as it denied immigration benefits to those who, like some of the immigrant and nonimmigrant Plaintiffs, followed the rules and entered and are now lawfully present in the United States.

9.      The First Muslim Ban was also narrower than originally proposed, because it applies only to a subset of Muslims rather than all Muslims.  This, however, does not cure the policy of its constitutional infirmity.  While the First Muslim Ban did not apply to all Muslims, the policy *only* applied to Muslims.

10.     The text of the First Muslim Ban implemented an impermissible religious gerrymander that divided foreign nationals, even those lawfully present inside the United States, into favored and disfavored groups based on their faith.

11.     Likewise, the First Muslim Ban also divided green card holders, lawfully present inside the United States, into favored and disfavored groups based on their faith.

12.     As a result, the First Muslim Ban was a racially biased, religiously motivated and factually baseless impermissible executive overreach. Moreover, its motivation and application was irrational and unwarranted.

13.     After the Ninth Circuit Court upheld a nationwide injunction against the First Muslim Ban, Defendants began to formulate a revised executive order.

14.     On February 21, 2017, however, Presidential Senior Advisor Stephen Miller explained to Fox News that the revised order was "going to have the same basic policy

outcome for the country," confirming that the objective to ban as much Muslim immigration as the administration believes the judiciary will allow remained unchanged.[2]

15.     On March 6, 2017, Defendant Trump issued Revised Order 13780, entitled "Executive Order Protecting the Nation From Foreign Terrorist Entry Into The United States (hereinafter the "Revised Order"), that revokes the First Muslim Ban[3] and creates a framework that although neutral on its face, maintains the same intent as the order It revised.   Additionally, it's system of case-by-case waivers allows the particular policy mechanisms in the First Muslim Ban to be implemented through the framework of the Revised Order.

16.     Notably, the Revised Order spends a significant amount of space defending the First Muslim Ban, claiming that "Defendant Trump exercised [his] authority under Article II of the Constitution and under section 212(f) of the INA" by issuing it, and that it did not discriminate on the basis of religion:

> Executive Order 13769 did not provide a basis for discriminating for or against members of any particular religion.  While that order allowed for prioritization of refugee claims from members of persecuted religious minority groups, that priority applied to refugees from every nation, including those in which Islam is a minority religion, and it applied to minority sects within a religion.  That order was not motivated by animus toward any religion, but was instead intended to protect the ability of religious minorities -- whoever they are and wherever they reside – to avail themselves of the USRAP in light of their particular challenges and circumstances.  Revised Order at Section 1(b)(iv).

---

[2] Stephen Miller's Fox News interview is coming back to haunt President Trump, The Washington Post, March 9, 2017, available at: https://www.washingtonpost.com/news/the-fix/wp/2017/03/09/stephen-millers-fox-news-interview-is-coming-back-to-haunt-president-trump/?utm_term=.d96e059c6a60
[3] See Revised Order at Section 13.

17.     In the end, the Revised Order maintains part of the immigration ban that the First Muslim Ban imposed: the part that prohibits nonimmigrant, nonresident Muslims from traveling to the United States.

18.     The Revised Order also removes Iraq from the list of Predominantly Muslim Countries.  Notably, a significant percentage of Iraqi refugees admitted to the United States are Christian.

19.     Because the history and text of the First Muslim Ban reveal an illegal purpose and effect, because the effects of the Revised Order continue to impact foreign nationals whose visa applications were not approved pursuant to the First Muslim Ban, and because the illegal purpose and effect of the First Muslim Ban can still be accomplished through the Revised Order via the case-by-case discretionary and nonreviewable waivers, Plaintiffs' claims must be sustained.

## Parties

20.     Plaintiff Linda Sarsour is an American Muslim residing in Kings County, New York.  Plaintiff Sarsour is a Palestinian activist and Executive Director of the Arab American Association of New York.  In 2016, she served as spokesperson for Presidential Candidate Senator Bernie Sanders, and was one of three national co-chairs for the 2017 Women's March held the day after the inauguration of Donald Trump as President of the United States. Plaintiff Sarsour has appeared in "*The Hijabi Monologues*" and has her own show, *The Linda Sarsour Show*.  Plaintiff Sarsour has suffered and will continue to suffer an ongoing concrete harm, in addition to psychological and spiritual consequences, since the initial announcement of the "Muslim Ban" as a result of the Defendants sending a message of (1) disfavor and condemnation of her religion of Islam, (2) marginalization and exclusion of

Muslims, including herself, based on the false messaging that Muslims are prone to commit terrorism, (3) the endorsement of all religions over her own, (4) Muslims are outsiders, dangerous, and not full members of the political community, and (5) all non-adherents of Islam are insiders and therefore favored.  In fact, Plaintiff Sarsour has had to change her conduct adversely in that she has been required to assist and advocate on behalf of Muslims targeted by the Muslim Ban and defend her religion as a religion of peace on national media outlets and through grassroots efforts.

21.     Plaintiff Rashida Tlaib is a Muslim American residing in Wayne County, Michigan.  Plaintiff Tlaib is a former Democratic member of the Michigan House of Representatives and an attorney at the Sugar Law Center for Economic and Social Justice. Upon her swearing in on January 1, 2009, Plaintiff Tlaib became the first Muslim-American woman to serve in the Michigan Legislature, and only the second Muslim woman in history to be elected to any state legislature in America.  Plaintiff Tlaib suffered and will continue to suffer an ongoing concrete harm, in addition to psychological and spiritual consequences, since the initial announcement of the "Muslim Ban" as a result of the Defendants sending a message of (1) disfavor and condemnation of her religion of Islam, (2) marginalization and exclusion of Muslims, including herself, based on the false messaging that Muslims are prone to commit terrorism, (3) the endorsement of all religions over her own, (4) Muslims are outsiders, dangerous, and not full members of the political community, and (5) all non-adherents of Islam are insiders and therefore favored.  In fact, Plaintiff Tlaib has had to change her conduct adversely in that she has been required to assist and advocate on behalf of Muslims targeted by the Muslim Ban and defend her religion as a religion of peace on national media outlets and through grassroots efforts.

22.     Plaintiff Zahra Billoo is a Muslim American residing in Santa Clara County, California.  Plaintiff Billoo is a civil rights attorney and the Executive Director of the Council on American-Islamic Relations, San Francisco Bay Area (CAIR-SFBA), a chapter of the nation's largest Muslim civil rights and civil liberties advocacy organization, and a prominent civil rights activist.  Plaintiff Billoo is frequently seen at mosques and universities facilitating trainings and workshops as a part of CAIR's grassroots efforts to empower the American Muslim community and build bridges with allies on civil rights issues.  Plaintiff Billoo has suffered and will continue to suffer an ongoing concrete harm, in addition to psychological and spiritual consequences, since the initial announcement of the "Muslim Ban" as a result of the Defendants sending a message of (1) disfavor and condemnation of her religion of Islam, (2) marginalization and exclusion of Muslims, including herself, based on the false messaging that Muslims are prone to commit terrorism, (3) the endorsement of all religions over her own, (4) Muslims are outsiders, dangerous, and not full members of the political community, and (5) all non-adherents of Islam are insiders and therefore favored.  In fact, Plaintiff Billoo has had to change her conduct adversely in that she has been required to assist and advocate on behalf of Muslims targeted by the Muslim Ban and defend her religion as a religion of peace on national media outlets and through grassroots efforts.

23.     Plaintiff Nihad Awad is a Muslim American residing in Washington County, D.C.  Plaintiff Awad is National Executive Director and co-founder of the Council on American-Islamic Relations (CAIR), the nation's largest Muslim civil rights and civil liberties advocacy organization, and a prominent civil rights activist.  As a national leader in the civil rights movement, Plaintiff Awad has led multiple campaigns to defend the rights of Muslims and to help Americans of other faiths better understand Islam. His work includes interfacing

with the U.S. government, facilitating interfaith dialogue, speaking at conferences, conducting training and leadership seminars, and appearing in national and international media to discuss Islam and American Muslims. Plaintiff Awad has testified before both Houses of the U.S. Congress on matters involving Muslims in America. In 1997, he served on the White House Civil Rights Advisory Panel to the Commission on Safety and Security. In the 2000, 2004, 2008, and 2012 presidential elections, Plaintiff Awad was a key figure in creating the Muslim voting bloc. In 2006, he traveled to Iraq on a humanitarian mission to appeal for the release of American journalist Jill Carrol who was kidnapped and later released in Iraq. In September, 2011, Plaintiff Awad traveled to Iran as part of an interfaith delegation to meet with the President of Iran to appeal for the release of two American hikers held by Iran. In 2004, he was named one of National Journal's more than 100 Most Influential People in the United States whose ideas will help shape the debate over public policy issues for the next decade. In 2009, he was named by a Georgetown University publication as one of the 500 most influential Muslims in the world. And in 2010, Arabian Business ranked him as 39th in the "Arabian Business Power 100" list, its annual listing of the most influential Arabs. Plaintiff Awad has suffered and will continue to suffer an ongoing concrete harm, in addition to psychological and spiritual consequences, since the initial announcement of the "Muslim Ban" as a result of the Defendants sending a message of (1) disfavor and condemnation of his religion of Islam, (2) marginalization and exclusion of Muslims, including himself, based on the false messaging that Muslims are prone to commit terrorism, (3) the endorsement of all religions over his own, (4) Muslims are outsiders, dangerous, and not full members of the political community, and (5) all non-adherents of Islam are insiders and therefore favored. In fact, Plaintiff Awad has had to change his conduct adversely in that he has been required

to assist and advocate on behalf of Muslims targeted by the Muslim Ban and defend his religion as a religion of peace on national media outlets and through grassroots efforts.

24.     Plaintiff Corey Saylor is a Muslim American residing in Fairfax County, Virginia.  Plaintiff Saylor is Director of the Department to Monitor and Combat Islamophobia at the Council on American-Islamic Relations (CAIR), the nation's largest Muslim civil rights and civil liberties advocacy organization, and a prominent civil rights activist.  Plaintiff Saylor is an expert on political communications, legislative advocacy, media relations and anti-Islam prejudice in the United States.  He is a regular voice on U.S. and international news outlets.  Plaintiff Saylor has also run successful advocacy campaigns against corporate giants such as Burger King and Bell Helicopter-Boeing when their actions or advertisements negatively impacted the American Muslim community.  Plaintiff Saylor has suffered and will continue to suffer an ongoing concrete harm, in addition to psychological and spiritual consequences, since the initial announcement of the "Muslim Ban" as a result of the Defendants sending a message of (1) disfavor and condemnation of his religion of Islam, (2) marginalization and exclusion of Muslims, including himself, based on the false messaging that Muslims are prone to commit terrorism, (3) the endorsement of all religions over his own, (4) Muslims are outsiders, dangerous, and not full members of the political community, and (5) all non-adherents of Islam are insiders and therefore favored.  In fact, Plaintiff Saylor has had to change his conduct adversely in that he has been required to assist and advocate on behalf of Muslims targeted by the Muslim Ban and defend his religion as a religion of peace on national media outlets and through grassroots efforts.

25.     Plaintiff Dawud Walid is a Muslim American residing in Wayne County, Michigan.  Plaintiff Walid is the Executive Director of the Council on American-Islamic

Relations, Michigan (CAIR-MI), a chapter of the nation's largest Muslim civil rights and civil liberties advocacy organization, and a prominent civil rights activist.  Plaintiff Walid has been interviewed and quoted in approximately 150 media outlets and has lectured at over 50 institutions of higher learning about Islam, interfaith dialogue and social justice.  Plaintiff Walid served in the United States Navy under honorable conditions earning two United States Navy & Marine Corp Achievement medals while deployed abroad.  He has also received awards of recognition from the city councils of Detroit and Hamtramck and from the Mayor of Lansing as well as a number of other religious and community organizations. Plaintiff Walid has suffered and will continue to suffer an ongoing concrete harm, in addition to psychological and spiritual consequences, since the initial announcement of the "Muslim Ban" as a result of the Defendants sending a message of (1) disfavor and condemnation of his religion of Islam, (2) marginalization and exclusion of Muslims, including himself, based on the false messaging that Muslims are prone to commit terrorism, (3) the endorsement of all religions over his own, (4) Muslims are outsiders, dangerous, and not full members of the political community, and (5) all non-adherents of Islam are insiders and therefore favored. In fact, Plaintiff Walid has had to change his conduct adversely in that he has been required to assist and advocate on behalf of Muslims targeted by the Muslim Ban and defend his religion as a religion of peace on national media outlets and through grassroots efforts.

26.     Plaintiff Basim Elkarra is a Muslim American residing in Sacramento County, California.  Plaintiff Elkarra is the Executive Director of the Council on American-Islamic Relations, Sacramento Valley (CAIR-SAC), a chapter of the nation's largest Muslim civil rights and civil liberties advocacy organization, and a prominent civil rights activist.  Plaintiff Elkarra is a former board member of the Sacramento chapter of the American Civil Liberties

Union, and serves on the Executive Board of the California Democratic Party. He also serves on the City of Sacramento Community Police Commission.  In 2011, the United States Embassy in London sent Plaintiff Elkarra to England to meet young British Muslims as part of a strategy to promote civic engagement.  Plaintiff Elkarra has suffered and will continue to suffer an ongoing concrete harm, in addition to psychological and spiritual consequences, since the initial announcement of the "Muslim Ban" as a result of the Defendants sending a message of (1) disfavor and condemnation of his religion of Islam, (2) marginalization and exclusion of Muslims, including himself, based on the false messaging that Muslims are prone to commit terrorism, (3) the endorsement of all religions over his own, (4) Muslims are outsiders, dangerous, and not full members of the political community, and (5) all non-adherents of Islam are insiders and therefore favored.  In fact, Plaintiff Elkarra has had to change his conduct adversely in that he has been required to assist and advocate on behalf of Muslims targeted by the Muslim Ban and defend his religion as a religion of peace on national media outlets and through grassroots efforts.  Moreover, Plaintiff Elkarra has in-laws in Syria that he is unable to bring to visit him in the United States pursuant to the Revised Order that he would otherwise seek to bring to visit him.

27.     Plaintiff Hussam Ayloush is a Muslim American residing in Riverside County, California.  Plaintiff Ayloush is the Executive Director of the Council on American-Islamic Relations, Los Angeles (CAIR-LA), a chapter of the nation's largest Muslim civil rights and civil liberties advocacy organization, and a prominent civil rights activist and community organizer.  Ayloush is a fourth-term elected Delegate to the California Democratic Party (CDP). He also serves on the board of the Muslim American Homeland Security Congress (MAHSC).  Plaintiff Ayloush has suffered and will continue to suffer an ongoing concrete

12

harm, in addition to psychological and spiritual consequences, since the initial announcement of the "Muslim Ban" as a result of the Defendants sending a message of (1) disfavor and condemnation of his religion of Islam, (2) marginalization and exclusion of Muslims, including himself, based on the false messaging that Muslims are prone to commit terrorism, (3) the endorsement of all religions over his own, (4) Muslims are outsiders, dangerous, and not full members of the political community, and (5) all non-adherents of Islam are insiders and therefore favored.  In fact, Plaintiff Ayloush has had to change his conduct adversely in that he has been required to assist and advocate on behalf of Muslims targeted by the Muslim Ban and defend his religion as a religion of peace on national media outlets and through grassroots efforts.  Moreover, Plaintiff Ayloush has family in Syria that he is unable to bring to visit him in the United States pursuant to the Revised Order that he would otherwise seek to bring to visit him.

28.     Plaintiff Hassan Shibly is a Muslim American residing in Hillsborough County, Florida.  Plaintiff Shibly is the Chief Executive Director of the Council on American-Islamic Relations, Florida (CAIR-FL), a chapter of the nation's largest Muslim civil rights and civil liberties advocacy organization, and a prominent civil rights activist.  Plaintiff Shibly met with President Barack Obama and several high-ranking government officials regarding Islam and civil rights issues facing Muslims.  He also often serves as a consultant on Islam for, among other private entities, law enforcement and other government agencies.  Plaintiff Shibly has suffered and will continue to suffer an ongoing concrete harm, in addition to psychological and spiritual consequences, since the initial announcement of the "Muslim Ban" as a result of the Defendants sending a message of (1) disfavor and condemnation of his religion of Islam, (2) marginalization and exclusion of Muslims, including himself, based

on the false messaging that Muslims are prone to commit terrorism, (3) the endorsement of all religions over his own, (4) Muslims are outsiders, dangerous, and not full members of the political community, and (5) all non-adherents of Islam are insiders and therefore favored. In fact, Plaintiff Shibly has had to change his conduct adversely in that he has been required to assist and advocate on behalf of Muslims targeted by the Muslim Ban and defend his religion as a religion of peace on national media outlets and through grassroots efforts.

29.     Plaintiff Alia Salem is a Muslim American residing in Dallas County, Texas. Plaintiff Salem is the Executive Director of the Council on American-Islamic Relations, Dallas/Fort Worth (CAIR-DFW), a chapter of the nation's largest Muslim civil rights and civil liberties advocacy organization, and a prominent civil rights activist working for social justice, understanding and empowerment in her community.  Plaintiff Salem's work with CAIR-DFW has been featured on local, national and international media outlets.  Plaintiff Salem has suffered and will continue to suffer an ongoing concrete harm, in addition to psychological and spiritual consequences, since the initial announcement of the "Muslim Ban" as a result of the Defendants sending a message of (1) disfavor and condemnation of her religion of Islam, (2) marginalization and exclusion of Muslims, including herself, based on the false messaging that Muslims are prone to commit terrorism, (3) the endorsement of all religions over her own, (4) Muslims are outsiders, dangerous, and not full members of the political community, and (5) all non-adherents of Islam are insiders and therefore favored. In fact, Plaintiff Salem has had to change her conduct adversely in that she has been required to assist and advocate on behalf of Muslims targeted by the Muslim Ban and defend her religion as a religion of peace on national media outlets and through grassroots efforts.

30.     Plaintiff Adam Soltani is a Muslim American residing in Oklahoma County, Oklahoma.  Plaintiff Soltani is the Executive Director of the Council on American-Islamic Relations, Oklahoma (CAIR-OK), a chapter of the nation's largest Muslim civil rights and civil liberties advocacy organization, and a prominent civil rights activist.   Plaintiff Soltani currently serves as the chair of the Oklahoma Conference of Churches' Religions United Committee and planning committee member for OKC's Jewish-Muslim Film Institute. He is also a former member of the Oklahoma Democratic Party Religious Education Committee, former board member of the Interfaith Alliance of Oklahoma, and a former member of Islamic Society of Greater Oklahoma City Executive Committee.  Plaintiff Soltani has suffered and will continue to suffer an ongoing concrete harm, in addition to psychological and spiritual consequences, since the initial announcement of the "Muslim Ban" as a result of the Defendants sending a message of (1) disfavor and condemnation of his religion of Islam, (2) marginalization and exclusion of Muslims, including himself, based on the false messaging that Muslims are prone to commit terrorism, (3) the endorsement of all religions over his own, (4) Muslims are outsiders, dangerous, and not full members of the political community, and (5) all non-adherents of Islam are insiders and therefore favored.  In fact, Plaintiff Soltani has had to change his conduct adversely in that he has been required to assist and advocate on behalf of Muslims targeted by the Muslim Ban and defend his religion as a religion of peace on national media outlets and through grassroots efforts.  Moreover, Plaintiff Soltani has family in Iran that he is unable to bring to visit him in the United States pursuant to the Revised Order that he would otherwise seek to bring to visit him.

31.     Plaintiff Imran Siddiqi is a Muslim American residing in Maricopa County, Arizona.  Plaintiff Siddiqi is the Executive Director of the Council on American-Islamic

Relations, Oklahoma (CAIR-AZ), a chapter of the nation's largest Muslim civil rights and civil liberties advocacy organization.  Plaintiff Siddiqi is a writer and prominent civil rights activist.  He has written extensively on the subject of Islamophobia, Middle East Affairs, and issues affecting American Muslims.  Plaintiff Siddiqi has suffered and will continue to suffer an ongoing concrete harm, in addition to psychological and spiritual consequences, since the initial announcement of the "Muslim Ban" as a result of the Defendants sending a message of (1) disfavor and condemnation of his religion of Islam, (2) marginalization and exclusion of Muslims, including himself, based on the false messaging that Muslims are prone to commit terrorism, (3) the endorsement of all religions over his own, (4) Muslims are outsiders, dangerous, and not full members of the political community, and (5) all non-adherents of Islam are insiders and therefore favored.  In fact, Plaintiff Siddiqi has had to change his conduct adversely in that he has been required to assist and advocate on behalf of Muslims targeted by the Muslim Ban and defend his religion as a religion of peace on national media outlets and through grassroots efforts.

32.     Plaintiff Julia Shearson is a Muslim American residing in Cuyahoga County, Ohio.  Plaintiff Shearson is the Executive Director of the Cleveland chapter of the Council on American-Islamic Relations, Ohio (CAIR-OH), a chapter of the nation's largest Muslim civil rights and civil liberties advocacy organization, and a prominent civil rights activist.  She has delivered hundreds of lectures and trainings on Islam and Muslims, civil and human rights, diversity, Islamophobia, and immigration justice.  She was recently honored together with 22 area women for her leadership, activism, and community service in an art exhibit entitled "Reflections: The Many Facets of Stephanie Tubbs Jones" installed at Cleveland Hopkins Airport in memory of the late Congresswoman Stephanie Tubbs Jones.  Before joining CAIR-

OH, Shearson served in the field of education for over 10 years, teaching at Ohio University, Jewish Vocational Services in Boston and at the Summer School and Division of Continuing Education at Harvard University.  Plaintiff Shearson has suffered and will continue to suffer an ongoing concrete harm, in addition to psychological and spiritual consequences, since the initial announcement of the "Muslim Ban" as a result of the Defendants sending a message of (1) disfavor and condemnation of her religion of Islam, (2) marginalization and exclusion of Muslims, including herself, based on the false messaging that Muslims are prone to commit terrorism, (3) the endorsement of all religions over her own, (4) Muslims are outsiders, dangerous, and not full members of the political community, and (5) all non-adherents of Islam are insiders and therefore favored.  In fact, Plaintiff Shearson has had to change her conduct adversely in that she has been required to assist and advocate on behalf of Muslims targeted by the Muslim Ban and defend her religion as a religion of peace on national media outlets and through grassroots efforts.

33.    Plaintiff Namira Islam is a Muslim American residing in Oakland County, Michigan.  Plaintiff Islam is the Co-Founder and Executive Director of the Muslim Anti-Racism Collaborative (MuslimARC), a faith-based human rights education organization which focuses on racial justice.  Plaintiff Islam has worked in the areas of prisoner rights, and on international law and war crimes at the United Nations in The Hague, Netherlands. Plaintiff Islam has suffered and will continue to suffer an ongoing concrete harm, in addition to psychological and spiritual consequences, since the initial announcement of the "Muslim Ban" as a result of the Defendants sending a message of (1) disfavor and condemnation of her religion of Islam, (2) marginalization and exclusion of Muslims, including herself, based on the false messaging that Muslims are prone to commit terrorism, (3) the endorsement of

all religions over her own, (4) Muslims are outsiders, dangerous, and not full members of the political community, and (5) all non-adherents of Islam are insiders and therefore favored. In fact, Plaintiff Islam has had to change her conduct adversely in that she has been required to assist and advocate on behalf of Muslims targeted by the Muslim Ban and defend her religion as a religion of peace on national media outlets and through grassroots efforts.

34. Plaintiff Karen Dabdoub is a Muslim American residing in Hamilton County, Ohio. Plaintiff Dabdoub is the Executive Director of the Cincinnati chapter of the Council on American-Islamic Relations, Ohio (CAIR-OH), a chapter of the nation's largest Muslim civil rights and civil liberties advocacy organization, and a prominent civil rights activist. Plaintiff Dabdoub has served the community since 2006 as a commissioner with the Cincinnati Human Relations Commission and was the president of CHRC from 2009 - 2011. She is a founding member of Muslim Mothers Against Violence, a local group founded in 2005 by Muslim women to take a stand against violence, abroad and at home. She has been a member of the Martin Luther King Coalition of Cincinnati since 2006. She is a former member of the FBI Multi-Cultural Advisory Council and the Kentucky Commission on Human Rights Community Advisory Committee. She was a member of Friends of Open House – Cincinnati Chapter, an international organization that worked to bring about peace and understanding between Palestinians and Israelis. Plaintiff Dabdoub appears in the documentary "A Visit to a Mosque in America," an educational documentary, filmed locally, that has received national recognition and commendation. Plaintiff Dabdoub has suffered and will continue to suffer an ongoing concrete harm, in addition to psychological and spiritual consequences, since the initial announcement of the "Muslim Ban" as a result of the Defendants sending a message of (1) disfavor and condemnation of her religion of Islam, (2) marginalization and exclusion of

Muslims, including herself, based on the false messaging that Muslims are prone to commit terrorism, (3) the endorsement of all religions over her own, (4) Muslims are outsiders, dangerous, and not full members of the political community, and (5) all non-adherents of Islam are insiders and therefore favored. In fact, Plaintiff Dabdoub has had to change her conduct adversely in that she has been required to assist and advocate on behalf of Muslims targeted by the Muslim Ban and defend her religion as a religion of peace on national media outlets and through grassroots efforts.

35.    Plaintiff Jim Sues is a Muslim American residing in Bucks County, Pennsylvania. Plaintiff Sues is the Executive Director of the New Jersey chapter of the Council on American-Islamic Relations, New Jersey (CAIR-NJ), a chapter of the nation's largest Muslim civil rights and civil liberties advocacy organization, and a prominent civil rights and interfaith relations activist. Plaintiff Sues is also a Marketing Professional in the field of Telecommunications.  Besides launching start-ups and acting as a Telecommunications Consultant, he spent 20 years at IBM filling various Marketing roles such as Product Manager, Solutions Manager, and Strategy Team Lead.  Plaintiff Sues is guest lecturer for Comparative Religion courses at Drew University and multiple community colleges.  He also provides diversity training for corporations and local churches. Plaintiff Sues is a member of the south Orange – Maplewood Clergy Association and has served on the Board of Directors of various Muslim organizations including Majlis Ash-Shoora of New Jersey and the NIA Masjid in Newark, NJ. Plaintiff Sues has suffered and will continue to suffer an ongoing concrete harm, in addition to psychological and spiritual consequences, since the initial announcement of the "Muslim Ban" as a result of the Defendants sending a message of (1) disfavor and condemnation of his religion of Islam, (2) marginalization and exclusion of Muslims,

including himself, based on the false messaging that Muslims are prone to commit terrorism, (3) the endorsement of all religions over his own, (4) Muslims are outsiders, dangerous, and not full members of the political community, and (5) all non-adherents of Islam are insiders and therefore favored.  In fact, Plaintiff Sues has had to change his conduct adversely in that he has been required to assist and advocate on behalf of Muslims targeted by the Muslim Ban and defend his religion as a religion of peace on national media outlets and through grassroots efforts.

36.     Plaintiff Hanif Mohebi is a Muslim American residing in San Diego County, California.  Plaintiff Mohebi is the Executive Director of the San Diego chapter of the Council on American-Islamic Relations, San Diego (CAIR-SD), a chapter of the nation's largest Muslim civil rights and civil liberties advocacy organization, and a prominent civil rights activist.  He has appeared in both local and national media outlets and has worked to bridge the gap between minorities and the American public.  He has emerged as a guest speaker at high schools, universities, companies and community events on variety of topics ranging from Concepts of World Citizenship to The Cycle of Love, to History of Anti-Civil Liberties Legislations.  Plaintiff Mohebi has suffered and will continue to suffer an ongoing concrete harm, in addition to psychological and spiritual consequences, since the initial announcement of the "Muslim Ban" as a result of the Defendants sending a message of (1) disfavor and condemnation of his religion of Islam, (2) marginalization and exclusion of Muslims, including himself, based on the false messaging that Muslims are prone to commit terrorism, (3) the endorsement of all religions over his own, (4) Muslims are outsiders, dangerous, and not full members of the political community, and (5) all non-adherents of Islam are insiders and therefore favored.  In fact, Plaintiff Mohebi has had to change his

conduct adversely in that he has been required to assist and advocate on behalf of Muslims targeted by the Muslim Ban and defend his religion as a religion of peace on national media outlets and through grassroots efforts.

37.     Plaintiff Jaylani Hussein is a Muslim American residing in Ramsey County, Minnesota.  Plaintiff Hussein is the Executive Director of the San Diego chapter of the Council on American-Islamic Relations, Minnesota (CAIR-MN), a chapter of the nation's largest Muslim civil rights and civil liberties advocacy organization, and a prominent civil rights activist.  Plaintiff Hussein worked as the Community Liaison Officer at Metro State University and as a Planner for the Minnesota Department of Agriculture. In 2013, he created Zeila Consultants to develop and offer cross-cultural training workshops on East African cultures. He has presented on the Somali Culture to diverse public and private organizations across the US. He specializes in the areas of urban planning, community development, youth development (with over 8 years of experience in working in juvenile treatment centers for court adjudicated youth), legal and civil rights.  Plaintiff Hussein has suffered and will continue to suffer an ongoing concrete harm, in addition to psychological and spiritual consequences, since the initial announcement of the "Muslim Ban" as a result of the Defendants sending a message of (1) disfavor and condemnation of his religion of Islam, (2) marginalization and exclusion of Muslims, including himself, based on the false messaging that Muslims are prone to commit terrorism, (3) the endorsement of all religions over his own, (4) Muslims are outsiders, dangerous, and not full members of the political community, and (5) all non-adherents of Islam are insiders and therefore favored.  In fact, Plaintiff Hussein has had to change his conduct adversely in that he has been required to assist and

advocate on behalf of Muslims targeted by the Muslim Ban and defend his religion as a religion of peace on national media outlets and through grassroots efforts.

38.     Plaintiff John Robbins is a Muslim American residing in Middlesex County, Massachusetts.  Plaintiff Robbins is the Executive Director of the Massachusetts chapter of the Council on American-Islamic Relations, Massachusetts (CAIR-MA), a chapter of the nation's largest Muslim civil rights and civil liberties advocacy organization, and a prominent civil rights activist.  Plaintiff Robbins is a dedicated and experienced community organizer, nonprofit leader, and public intellectual.  He holds a Ph.D. in English, and completed a postdoctoral fellowship at Tufts University.  A dedicated educator, he has taught algebra to high-risk youth at a public high school in Maryland, English to refugee and orphan children in Turkey, and literature at Cornell and Tufts Universities.  His writings have appeared in numerous outlets including Fortune, Time, Muslim Matters, the Hill, the Jewish Journal, the Boston Globe, and the Boston Herald, and he is a regular contributor at the Huffington Post.  Dr. Robbins sits on the board of directors of Cooperative Metropolitan Ministries, the greater Boston area's oldest interfaith social justice network.  Plaintiff Robbins has suffered and will continue to suffer an ongoing concrete harm, in addition to psychological and spiritual consequences, since the initial announcement of the "Muslim Ban" as a result of the Defendants sending a message of (1) disfavor and condemnation of his religion of Islam, (2) marginalization and exclusion of Muslims, including himself, based on the false messaging that Muslims are prone to commit terrorism, (3) the endorsement of all religions over his own, (4) Muslims are outsiders, dangerous, and not full members of the political community, and (5) all non-adherents of Islam are insiders and therefore favored.  In fact, Plaintiff Robbins has had to change his conduct adversely in that he has been required to assist and

advocate on behalf of Muslims targeted by the Muslim Ban and defend his religion as a religion of peace on national media outlets and through grassroots efforts.   One of the Muslims that contacted Plaintiff Robbins for assistance is a student of Iranian national origin residing in Massachusetts.   The student was issued a single-entry visa and has valid F-1 status expiring on the anticipated date of completion of his education.   The student then traveled to Dubai in order to visit family, and applied to renew his visa just prior to the First Muslim Ban being issued.   Upon information and belief, the student's visa renewal application was not approved pursuant to the First Muslim Ban.  As of this date, the student's visa renewal application remains in administrative processing and has not yet been approved.  The student contacted his university, and was told by the administration that he would need to complete a study abroad program offered at a university in New Zealand during this school semester in order to maintain his F-1 status.  The student will be subjected to a discretionary and nonreviewable waiver process to renew his visa in order to continue his education, pursuant to Section 3(c)(i) of the Revised Order, based solely on his Iranian national origin.  Upon information and belief, the student's visa renewal application will be denied based on his religious status as a Muslim and his Iranian national origin, and as a result, he will be terminated from continuing his education at the university and lose his F-1 status.   Plaintiff Robbins intends to invite the student to speak to the local Massachusetts community about the effects of the Muslim Ban, however is unable bring him to the United States to speak due to the likelihood that the student will be unable to renew his student visa under the Revised Order based on his Muslim religious status and Iranian national origin.

39.     Plaintiff John Doe No. 1 is a lawful permanent resident and a Muslim of Syrian national origin residing in Oakland County, Michigan.  He is the Imam, or religious Muslim

leader, of a religious congregation.  Plaintiff John Doe No. 1 has suffered and will continue to suffer an ongoing concrete harm, in addition to psychological and spiritual consequences, since the initial announcement of the "Muslim Ban" as a result of the Defendants sending a message of (1) disfavor and condemnation of his religion of Islam, (2) marginalization and exclusion of Muslims, including himself, based on the false messaging that Muslims are prone to commit terrorism, (3) the endorsement of all religions over his own, (4) Muslims are outsiders, dangerous, and not full members of the political community, and (5) all non-adherents of Islam are insiders and therefore favored.  In fact, Plaintiff John Doe No. 1 has had to change his conduct adversely in that he has been required to defend his religion as a religion of peace.

40.     Plaintiff John Doe No. 2 is a student and a Muslim of Somali national origin residing in the United States.  He was issued a single-entry visa and has valid F-1 status expiring on the anticipated date of completion of his education.  In the event that Plaintiff John Doe No. 2 travels outside the country, he will be subjected to a discretionary and nonreviewable waiver process to renew his student visa in order to continue his education, pursuant to Section 3(c)(i) of the Revised Order based solely on his Somali national origin.  Upon information and belief, Plaintiff John Doe No. 2's visa renewal application will be denied based solely on his religious status as a Muslim and his Somali national origin.  This inability to travel imposes a particular hardship on Plaintiff John Doe No. 2 and other similarly situated student non-USCs originating from the Predominantly Muslim Countries because students frequently lose access to student housing during scheduled curriculum breaks, and if they are unable to travel home during those breaks, they risk forfeiting their F-1 status and jeopardizing their education.  Yet even if housing accommodations during

breaks were provided, the Revised Order effectively deprives Plaintiff John Doe No. 2 from seeing his family for possibly the entire duration of his academic career.  As a result, in the event Plaintiff John Doe No. 2's involvement in this lawsuit could reasonably be expected to negatively impact his immigration status either under existing immigration law, or under the vetting procedures contemplated by the Revised Order.

41.     Plaintiff John Doe No. 3 is a student and a Muslim of Yemeni national origin residing in Wayne County, Michigan.  He was issued a single-entry visa and has valid F-1 status expiring on the anticipated date of completion of his education.  In the event that Plaintiff John Doe travels outside the country, he will be subjected to a discretionary and nonreviewable waiver process to renew his student visa in order to continue his education, pursuant to Section 3(c)(i) of the Revised Order based solely on his Yemeni national origin. Upon information and belief, Plaintiff John Doe No. 3's visa renewal application will be denied based solely on his religious status as a Muslim and his Somali national origin.  This inability to travel imposes a particular hardship on Plaintiff John Doe No. 3 and other similarly situated student non-USCs originating from the Predominantly Muslim Countries because students frequently lose access to student housing during scheduled curriculum breaks, and if they are unable to travel home during those breaks, they risk forfeiting their F-1 status and jeopardizing their education.  Yet even if housing accommodations during breaks were provided, the Revised Order effectively deprives Plaintiff John Doe No. 3 from seeing his family for possibly the entire duration of his academic career.  As a result, in the event Plaintiff John Doe No. 3's involvement in this lawsuit could reasonably be expected to negatively impact his immigration status either under existing immigration law, or under the vetting procedures contemplated by the Revised Order.

42.     Plaintiff John Doe No. 4 is an asylee and a Muslim of Syrian national origin, residing in Cook County, Illinois.  Plaintiff John Doe No. 4 has suffered and will continue to suffer an ongoing concrete harm, in addition to psychological and spiritual consequences, since the initial announcement of the "Muslim Ban" as a result of the Defendants sending a message of (1) disfavor and condemnation of his religion of Islam, (2) marginalization and exclusion of Muslims, including himself, based on the false messaging that Muslims are prone to commit terrorism, (3) the endorsement of all religions over his own, (4) Muslims are outsiders, dangerous, and not full members of the political community, and (5) all non-adherents of Islam are insiders and therefore favored.

43.     Plaintiff John Doe No. 5 is a lawful permanent resident and a Muslim of Sudanese national origin residing in Albany County, New York.  Plaintiff John Doe No. 5 filed a marriage petition for his wife, which has already been pending for fourteen months.  His wife has Sudanese citizenship through her parents although she has never lived in Sudan. Pursuant to the Revised Order, his wife will be subjected to a discretionary and nonreviewable waiver process to obtain a visa to enter the United States to be reunited with her husband pursuant to Section 3(c)(iv) based solely on her Sudanese national origin.  Upon information and belief, Plaintiff John Doe No. 5's visa application for his wife will be denied based solely on her religious status as a Muslim and her Sudanese national origin.  Plaintiff John Doe No. 5 has suffered and will continue to suffer an ongoing concrete harm, in addition to psychological and spiritual consequences, since the initial announcement of the "Muslim Ban" as a result of the Defendants sending a message of (1) disfavor and condemnation of his religion of Islam, (2) marginalization and exclusion of Muslims, including himself, based on the false messaging that Muslims are prone to commit terrorism, (3) the endorsement of

26

all religions over his own, (4) Muslims are outsiders, dangerous, and not full members of the political community, and (5) all non-adherents of Islam are insiders and therefore favored. In fact, Plaintiff John Doe No. 5 has had to change his conduct adversely in that he has been required to defend his religion as a religion of peace.

44.     Plaintiff John Doe No. 6 is a Muslim American of Sudanese national origin residing in Albany County, New York.  Plaintiff John Doe No. 6 filed a marriage petition for his wife, who is currently pregnant with their baby.  His application for his wife, however will be subjected to a discretionary and nonreviewable waiver process, pursuant to Section 3(c)(iv) of the Revised Order, based solely on her Sudanese national origin.  Upon information and belief, Plaintiff John Doe No. 6's visa application for his wife will be denied based solely on her religious status as a Muslim and her Sudanese national origin.  Plaintiff John Doe No. 6 has suffered and will continue to suffer an ongoing concrete harm, in addition to psychological and spiritual consequences, since the initial announcement of the "Muslim Ban" as a result of the Defendants sending a message of (1) disfavor and condemnation of his religion of Islam, (2) marginalization and exclusion of Muslims, including himself, based on the false messaging that Muslims are prone to commit terrorism, (3) the endorsement of all religions over his own, (4) Muslims are outsiders, dangerous, and not full members of the political community, and (5) all non-adherents of Islam are insiders and therefore favored. Plaintiff John Doe No. 6's involvement in this lawsuit could reasonably be expected to negatively impact his wife's immigration status either under existing immigration law, or under the vetting procedures contemplated by the Revised Order.

45.     Plaintiff John Doe No. 7 is a lawful permanent resident and a Muslim of Syrian national origin residing in Broward County, Florida.  Plaintiff John Doe No. 7 has suffered and

will continue to suffer an ongoing concrete harm, in addition to psychological and spiritual consequences, since the initial announcement of the "Muslim Ban" as a result of the Defendants sending a message of (1) disfavor and condemnation of his religion of Islam, (2) marginalization and exclusion of Muslims, including himself, based on the false messaging that Muslims are prone to commit terrorism, (3) the endorsement of all religions over his own, (4) Muslims are outsiders, dangerous, and not full members of the political community, and (5) all non-adherents of Islam are insiders and therefore favored.  Plaintiff John Doe No. 7's involvement in this lawsuit could reasonably be expected to negatively impact his immigration status either under existing immigration law, or under the vetting procedures contemplated by the Revised Order.

46.     Plaintiff John Doe No. 8 is a lawful permanent resident and a Muslim of Sudanese national origin residing in Phillips County, Missouri.  Plaintiff John Doe No. 8 filed a marriage petition for his wife, which was approved.  She applied for a visa to enter the United States to reunite with her husband, however her visa application remains pending. Pursuant to the Revised Order, his wife, a Sudanese national, will be subjected to a discretionary and nonreviewable waiver process to obtain the visa to enter the United States, pursuant to Section 3(c)(iv), based solely on her Sudanese national origin.  Upon information and belief, Plaintiff John Doe No. 8's visa application for his wife will be denied based solely on her religious status as a Muslim and her Sudanese national origin.  Plaintiff John Doe No. 8 has suffered and will continue to suffer an ongoing concrete harm, in addition to psychological and spiritual consequences, since the initial announcement of the "Muslim Ban" as a result of the Defendants sending a message of (1) disfavor and condemnation of his religion of Islam, (2) marginalization and exclusion of Muslims, including himself, based

on the false messaging that Muslims are prone to commit terrorism, (3) the endorsement of all religions over his own, (4) Muslims are outsiders, dangerous, and not full members of the political community, and (5) all non-adherents of Islam are insiders and therefore favored. Plaintiff John Doe No. 8's involvement in this lawsuit could reasonably be expected to negatively impact his or his wife's immigration status either under existing immigration law, or under the vetting procedures contemplated by the Revised Order.

47.     Plaintiff John Doe No. 9 is a lawful permanent resident and a Muslim of Syrian national origin residing in the United States. Plaintiff John Doe No. 9 has suffered and will continue to suffer an ongoing concrete harm, in addition to psychological and spiritual consequences, since the initial announcement of the "Muslim Ban" as a result of the Defendants sending a message of (1) disfavor and condemnation of his religion of Islam, (2) marginalization and exclusion of Muslims, including himself, based on the false messaging that Muslims are prone to commit terrorism, (3) the endorsement of all religions over his own, (4) Muslims are outsiders, dangerous, and not full members of the political community, and (5) all non-adherents of Islam are insiders and therefore favored. Plaintiff John Doe No. 9's involvement in this lawsuit could reasonably be expected to negatively impact his immigration status either under existing immigration law, or under the vetting procedures contemplated by the Revised Order.

48.     Plaintiff John Doe No. 10 is a Muslim American and a dual national, both a United States citizen and Syrian national residing in Suffolk County, Massachusetts. Plaintiff John Doe No. 10 has suffered and will continue to suffer an ongoing concrete harm, in addition to psychological and spiritual consequences, since the initial announcement of the "Muslim Ban" as a result of the Defendants sending a message of (1) disfavor and

condemnation of his religion of Islam, (2) marginalization and exclusion of Muslims, including himself, based on the false messaging that Muslims are prone to commit terrorism, (3) the endorsement of all religions over his own, (4) Muslims are outsiders, dangerous, and not full members of the political community, and (5) all non-adherents of Islam are insiders and therefore favored.

49.     Plaintiff John Doe No. 11 is a lawful permanent resident and a Muslim of Iraqi national origin residing in the United States.  Plaintiff John Doe No. 10 has suffered and will continue to suffer an ongoing concrete harm, in addition to psychological and spiritual consequences, since the initial announcement of the "Muslim Ban" as a result of the Defendants sending a message of (1) disfavor and condemnation of his religion of Islam, (2) marginalization and exclusion of Muslims, including himself, based on the false messaging that Muslims are prone to commit terrorism, (3) the endorsement of all religions over his own, (4) Muslims are outsiders, dangerous, and not full members of the political community, and (5) all non-adherents of Islam are insiders and therefore favored.

50.     Plaintiff Jane Doe No. 1 is an asylee and a Muslim of Syrian national origin, residing in Wayne County, Michigan.  Plaintiff Jane Doe No. 1 fled for fear of her life and safety from Syria, after being tortured by Syrian government forces.  Plaintiff Jane Doe No. 1 has suffered and will continue to suffer an ongoing concrete harm, in addition to psychological and spiritual consequences, since the initial announcement of the "Muslim Ban" as a result of the Defendants sending a message of (1) disfavor and condemnation of her religion of Islam, (2) marginalization and exclusion of Muslims, including herself, based on the false messaging that Muslims are prone to commit terrorism, (3) the endorsement of all religions over her own, (4) Muslims are outsiders, dangerous, and not full members of the political

community, and (5) all non-adherents of Islam are insiders and therefore favored.  In fact, Plaintiff Jane Doe No. 1 has had to change her conduct adversely in that she has been required to defend her religion as a religion of peace.  Plaintiff Jane Doe No. 1's involvement in this lawsuit could reasonably be expected to negatively impact her immigration status either under existing immigration law, or under the vetting procedures contemplated by the Revised Order.

51.     Plaintiff Jane Doe No. 2 is an asylee and a Muslim of Syrian national origin, residing in Cook County, Illinois.  Plaintiff Jane Doe No. 2 fled for fear of her life and safety from Syria.  Plaintiff Jane Doe No. 2 has suffered and will continue to suffer an ongoing concrete harm, in addition to psychological and spiritual consequences, since the initial announcement of the "Muslim Ban" as a result of the Defendants sending a message of (1) disfavor and condemnation of her religion of Islam, (2) marginalization and exclusion of Muslims, including herself, based on the false messaging that Muslims are prone to commit terrorism, (3) the endorsement of all religions over her own, (4) Muslims are outsiders, dangerous, and not full members of the political community, and (5) all non-adherents of Islam are insiders and therefore favored.

52.     Defendant Donald J. Trump is the current President of the United States of America.  Defendant Trump issued the First Muslim Ban, which is the subject of this action. Defendant Trump is being sued in his official capacity, only.

53.     Defendant John F. Kelly is the current Secretary of the U.S. Department of Homeland Security.  Defendant Kelly is responsible for implementing the First Muslim Ban, which is the subject of this action.  Defendant Kelly is being sued in his official capacity, only.

54.     Defendant James Comey is the current Director of the U.S. Federal Bureau of Investigation.   Defendant Comey is responsible for implementing the First Muslim Ban, which is the subject of this action.   Defendant Comey is being sued in his official capacity, only.

55.     Defendant U.S. Department of State is responsible for issuing visas and implementing the First Muslim Ban.  The Secretary of the U.S. Department of State position is currently vacant.

56.     Defendant Director of National Intelligence is responsible for implementing the First Muslim Ban.  The Director of National Intelligence position is currently vacant. Defendant Director of National Intelligence is being sued in his official capacity, only.

## Jurisdiction and Venue

57.     Under U.S. Const. Art. III §2, this Court has jurisdiction because the rights sought to be protected herein are secured by the United States Constitution.  Jurisdiction is proper pursuant to 28 U.S.C. § 1331, 5 U.S.C. § 702, 5 U.S.C. § 706, the United States Constitution, and federal common law.

58.     This action also seeks declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § § 2201-02, Rules 57 and 65 of the Federal Rules of Civil Procedure, and pursuant to the general, legal, and equitable powers of this Court.

59.     A substantial part of the unlawful acts alleged herein were committed within the jurisdiction of the United States District Court for the Eastern District of Virginia.

60.     Venue is proper under 42 U.S.C. § 1391(e) as to the Defendants because Defendants are officers or employees of the United States sued in their official capacity and

because this judicial district is where a substantial part of the events or omissions giving rise to the claims occurred.

## Factual Background

### Defendant Trump's Unconstitutional Executive Order
### Banning Muslims from Entering the United States

61.     The Revised Order is the as-promised outcome of Defendant Trump's hateful, year-long campaign which was fueled, in significant part, by a desire to stigmatize Islam and Muslims.

62.     Defendant Trump has often repeated his bigoted views on Islam and Muslims in a variety of contexts—in print, on television, and via official campaign statements.  The First Muslim Ban is the legal manifestation of those bigoted views.

63.     Defendant Trump's views on Islam are unequivocal.  On or about March 10, 2016, in an interview aired on CNN, Defendant Trump declared that he thinks "Islam hates us."

64.     His statements regarding Islam and Muslims give rise to the inference that the Revised Order is motivated by a bare desire to inflict harm on this faith and those that belong to it.

65.     In addition to Defendant Trump's statements regarding Islam and Muslims, the history of the Revised Order reveals its unlawful, discriminatory purpose.  On December 7, 2015, while campaigning, Defendant Trump called for "a total and complete shutdown of Muslims entering the United States until our country's representatives can figure out what is going on."

66.     Defendant Trump's rationale for this proposal included sweeping condemnations of Islam, the second largest religion in the world with over 1.6 billion people. His condemnation incorrectly surmised that Islam's religious traditions, which he referred to as "Sharia", "authoriz[e] such atrocities as murder against non-believers who won't convert, beheadings and more unthinkable acts that pose great harm to Americans, especially women."

67.     Subsequent to his nomination as the Republican candidate for the presidency, Defendant Trump began using facially neutral language to describe his anti-Muslim policy. This neutral language suggested that a Trump administration would stop immigration "from any nation that has been compromised by terrorism."

68.     On or about July 24, 2016, however, Defendant Trump conceded that the neutral language was simply a veneer intended to subdue the public controversy generated by his discriminatory plan.  To that end, in an interview on NBC, Defendant Trump explained the following: "People were so upset when I used the word Muslim.  Oh, you can't use the word Muslim...And I'm OK with that, because I'm talking territory instead of Muslim."

69.     In fact, on January 27, 2017, hours before signing the First Muslim Ban, Defendant Trump explained during an interview with the Christian Broadcasting Network that his order was "going to help [persecuted Christians]" as opposed to Muslims.  His answer made clear that Defendant Trump's intention in crafting the Muslim Ban was to treat foreign nationals in the seven identified countries differently based on their faith.

70.     The underlying unlawful discriminatory purpose of the First Muslim Ban is evidenced by the recent admissions by close associates of Defendant Trump, such as Rudolf Giuliani's recent admission that the President asked him to find legal ways to implement

what he called "a Muslim Ban." On January 28, 2017, during a Fox News interview, Giuliani, who is a close advisor to the Defendant Trump, boasted that after then-candidate Donald Trump announced his Muslim Ban—which explicitly prohibited Muslims from obtaining entry into the United States—Giuliani was asked to "show [Donald Trump] the right way to do [the Muslim Ban] legally." Giuliani then conceded that he formed a commission to find a way to accomplish the Muslim Ban's scope without mentioning Islam or Muslims.

71.     The language of the First Muslim Ban corroborates Defendant Trump's admission that the facially neutral language is simply a pretext. That Order did not exclude persons based on where they are from but on what religion they belong to. Section 5 suspended all grounds for persecution and allowed only one: "religious-based persecution." However, religious-based persecution could only be claimed by individuals who are not Muslim. Thus, the First Muslim Ban constituted a religious gerrymander—drawing distinctions that exclude the disfavored group—Muslims—while leaving others untouched.

72.     Since the signing of the First Muslim Ban, several federal courts around the country issued stays.

73.     On January 28, 2017, Judge Brinkema in the Eastern District of Virginia issued a Temporary Restraining Order that forbade Defendants "from removing petitioners—lawful permanent residents at Dulles International Airport—for a period of 7 days from the issuance of that Order. That Order is attached an exhibit.

74.     On the same day, the United States District Court of the Western District of Washington granted an emergency stay of removal that prohibits Defendants "from removing John Doe I and Joe Doe II from the United States." That Order is also attached as an exhibit.

75.     Again on the same day, the United States District Court for the Eastern District of New York granted an emergency stay of removal, finding that the petitioners "have a strong likelihood of success in establishing that the removal of the petitioner and others similarly situated violates their rights to Due Process and Equal Protection."  That Order is also attached as an exhibit.

76.     On January 29, 2017, the United States District Court for the District of Massachusetts granted a Temporary Restraining Order against parts of the First Muslim Ban, finding that the petitioners had established a "strong likelihood of success in establishing that the detention and/or removal of the petitioners and others similarly situated would violate their rights to Due Process and Equal Protection."  That Order is also attached as an exhibit.

77.     That same day, the United States District Court for the Central District of California prohibited the defendants "from barring Petitioner's return to the United States" because he had "demonstrated a strong likelihood of success in establishing that removal violates the Establishment Clause" as well as other constitutional and statutory provisions. That Order is also attached as an exhibit.

78.     On February 2, 2017, the United States District Court for the Eastern District of Michigan (Southern Division) issued an order temporarily enjoying the United States from applying Sections 3(c) and 3(e) of the First Muslim Ban.  That Order is also attached as an exhibit.

79.     On February 9, 2017, the Ninth Circuit Court delivered a unanimous decision upholding a temporary restraining order issued by the United States District Court for the

Western District of Washington enjoining and restraining Sections 3(c) and 5(a)-(c) of the First Muslim Ban.  That Order is also attached as an exhibit.

80.     The unlawful effects and purpose of the First Muslim Ban persist through the issuance of the Revised Order, issued on March 6, 2017.

81.     The Revised Order goes into effect on March 16, 2017.  Revised Order at Section 14.

82.     At the outset, all foreign nationals that had pending visa applications whose applications were not processed pursuant to the First Muslim Ban will continue to be denied entry because they are outside the United States and because they do not have a valid visa as of the effective date of the Revised Order, solely based on their religious status as Muslims and based on their national origin.  Revised Order at Section 3(a).

83.     The Revised Order creates a framework that although neutral on its face, allows case-by-case waivers such that the unlawful goals and intent of the First Muslim Ban could still be implemented on a discretionary and nonreviewable basis.

84.     As such, pending visa applications whose applications were not processed pursuant to the First Muslim Ban and future visa applications filed by nationals originating from the Predominantly Muslim Countries will be subjected to a discretionary and nonreviewable waiver process, based solely on their national origin.

85.     As such, the Revised Order creates a framework that although neutral on its face, allows case-by-case waivers such that the unlawful goals and intent of the First Muslim Ban could still be implemented on a discretionary and nonreviewable basis.

86.     Plaintiffs have suffered and will continue to suffer an ongoing concrete harm and spiritual and psychological consequences since the initial announcement of the "Muslim

Ban" as a result of the Defendants having sent a message to the broader American public of (1) disfavor and condemnation of their religion of Islam, (2) marginalization and exclusion of Muslims, including Plaintiffs, based on the false messaging that Muslims are prone to commit terrorism, (3) the endorsement of all religions over their own, (4) Muslims are outsiders, dangerous, and not full members of the political community, and (5) all non-adherents of Islam are insiders and therefore favored.  *McCreary Cnty. v. ACLU*, 545 U.S. 844, 860 (2005); *Moss v. Spartanburg County Sch. Dist. Seven*, 683 F.3d 599, 607 (4th Cir. S.C. 2012); *Catholic League for Religious & Civ. Rights v. City & County of San Francisco*, 567 F.3d 595 (9th Cir. 2009).

**COUNT I**
**VIOLATION OF THE FIRST AMENDMENT**
**TO THE UNITED STATES CONSTITUTION**
**(Establishment Clause)**

**(On behalf of all Plaintiffs)**

87.    The foregoing allegations are realleged and incorporated herein.

88.    The Revised Order creates a framework that although neutral on its face, maintains the intent of the First Muslim Ban and establishes a case-by-case waiver scheme that allows the unlawful goals and intent of the Muslim Ban – the denial of entry of Muslim into the United States – to still be implemented in full.

89.    Defendants' unique application of the Revised Order to Muslims, insofar as it allows for the (1) suspension of entry of Muslim immigrants and Muslim nonimmigrants originating from the Predominantly Muslim Countries from entering the United States, (2) prohibition of some Muslim immigrants and Muslim nonimmigrants (those who have lawful status but who must obtain or renew their visas) originating from the Predominantly Muslim

Countries and who reside lawfully in the United States from engaging in international travel and reentering the United States, and the (3) disparate treatment of immigrants and nonimmigrants originating from the Predominantly Muslim Countries insofar as those persons would have to make a heightened showing and obtain a waiver to secure a visa to the United States.

90.     Together, these consequences result in Muslims and Islam being treated on less than equal terms with other religious and non-religious groups, thereby creating a denominational preference against Islam as a religion.

91.     Defendants have deprived and continue to deprive Plaintiffs and similarly situated Muslims originating from the Predominantly Muslim Countries their right to be free from religious discrimination in violation of the Establishment Clause to the First Amendment to the United States Constitution by signing the Revised Order whose purpose and effect is to discriminate on the basis of religion.

92.     Defendant Trump's Revised Order imposes upon Islam—the religion to which all Plaintiffs belong—the stigma of government disfavor.  This condemnation, which has been broad cast to the general public via the First Muslim Ban, and which the Revised Order continues to broadcast, signals to Plaintiffs' fellow citizens that their faith is uniquely threatening and dangerous insofar as it is the only religion and religious community singled out for disfavored treatment.

93.     Plaintiffs have suffered and will continue to suffer an ongoing concrete harm since the initial announcement of the "Muslim Ban" as a result of the Defendants having sent a message to the broader American public of (1) disfavor and condemnation of their religion of Islam, (2) marginalization and exclusion of Muslims, including Plaintiffs, based on the false

messaging that Muslims are prone to commit terrorism, (3) the endorsement of all religions over their own, (4) Muslims are outsiders, dangerous, and not full members of the political community, and (5) all non-adherents of Islam are insiders and therefore favored. *McCreary Cnty. v. ACLU*, 545 U.S. 844, 860 (2005); *Moss v. Spartanburg County Sch. Dist. Seven*, 683 F.3d 599, 607 (4th Cir. S.C. 2012); *Catholic League for Religious & Civ. Rights v. City & County of San Francisco*, 567 F.3d 595 (9th Cir. 2009).

94.     Defendants' actions lack a compelling interest insofar as their true purpose is to ban Muslims originating from the Predominantly Muslim Countries from entering the United States based solely on their religious beliefs, to stigmatize Islam, and to broadcast an anti-Islam message.

95.     The Revised Order is not narrowly tailored to the interest the government asserts, insofar as it applies a blanket suspension to certain immigrants even when the Defendants possess no information to indicate any of the immigrants pose any threat to the United States.

96.     Defendants' unlawful actions caused Plaintiffs and similarly situated Muslims irreparable harm, and accordingly they are entitled to injunctive and declaratory relief, in addition to all such other relief this Court deems just and proper including costs and attorneys' fees in this action.

97.     Plaintiffs are entitled to declaratory relief, and the issuance of a preliminary and permanent injunction in the form described in the Prayer for Relief below.

WHEREFORE, Plaintiffs request this Honorable Court grant declaratory and injunctive relief in the form described in the Prayer for Relief below, plus all such other relief this Court deems just and proper including costs and attorneys' fees incurred in this action.

## COUNT II
## VIOLATION OF THE FIFTH AMENDMENT
## TO THE UNITED STATES CONSTITUTION
## (Jurisdiction under 28 U.S.C. § 1331 and 5 U.S.C. § 702)
## (Equal Protection)
## (On behalf of the John Doe and Jane Doe Plaintiffs)

98.     The foregoing allegations are realleged and incorporated herein.

99.     The Revised Order creates a framework that although neutral on its face, maintains the intent of the First Muslim Ban and establishes a case-by-case waiver scheme that allows the unlawful goals and intent of the Muslim Ban – the denial of entry of Muslim into the United States – to still be implemented in full.

100.    Defendants' unique application of the Revised Order to Muslims, insofar as it allows for the (1) suspension of entry of Muslim immigrants and Muslim nonimmigrants originating from the Predominantly Muslim Countries from entering the United States, (2) prohibition of some Muslim immigrants and Muslim nonimmigrants (those who have lawful status but who must obtain or renew their visas) originating from the Predominantly Muslim Countries and who reside lawfully in the United States from engaging in international travel and reentering the United States, and the (3) disparate treatment of immigrants and nonimmigrants originating from the Predominantly Muslim Countries insofar as those persons would have to make a heightened showing and obtain a waiver to secure a visa to the United States.

101.    Defendants have deprived and continue to deprive Plaintiffs and similarly situated Muslims originating from the Predominantly Muslim Countries their right to be free from religious discrimination in violation of the Fifth Amendment to the United States

Constitution by signing the Revised Order whose purpose and effect is to discriminate on the basis of religion.

102.    By creating a framework that allows for the implementation of a Muslim Ban – the denial of entry of Muslims into the United States – through a discretionary and nonreviewable waiver process, Defendants have treated them like second-class citizens.

103.    Moreover, by preventing the student John Doe Plaintiffs and other similarly situated Muslims originating from the Predominantly Muslim Countries and lawfully residing in the United States who are pursuing their education, from engaging in international travel and returning home in the United States, in order to avoid risking forfeiting their F-1 status and jeopardizing their education, Defendants have treated them like second-class citizens.

104.    Moreover, by subjecting Muslims originating from the Predominantly Muslim Countries to a discretionary and nonreviewable waiver process to obtain a visa, including family-based visas, solely based on their national origin, Defendants have treated them like second-class citizens.

105.    Defendants' above-described actions are motivated by the religious status of the John and Jane Doe Plaintiffs and other similarly situated non-USC Muslims originating from the Predominantly Muslim Countries and on the basis of their constitutionally-protected free exercise of religion.

106.    Defendants' actions lack a compelling interest insofar as their true purpose is to ban Muslims originating from the Predominantly Muslim Countries from entering the United States based solely on their religious beliefs.

107.    Defendants' above-described actions have a discriminatory effect upon and disparately impact the John and Jane Doe Plaintiffs and other similarly situated non-USC Muslims originating from the Predominantly Muslim Countries, and not non-USCs of other faiths originating from the same Predominantly Muslim Countries.

108.    The Revised Order is not narrowly tailored to the interest the government asserts, insofar as it applies a blanket suspension to certain immigrants even when the Defendants possess no information to indicate any of the immigrants pose any threat to the United States.

109.    Defendants' actions also not narrowly tailored insofar as they are entirely and demonstrably ineffectual and obvious alternatives exist.

110.    Defendants' above-described actions do not serve a compelling state interest or a legitimate or public purpose, nor are they the least restrictive means or narrowly tailored to achieve any such interest.

111.    Plaintiffs have suffered and will continue to suffer an ongoing concrete harm and spiritual and psychological consequences since the initial announcement of the "Muslim Ban" as a result of the Defendants having sent a message to the broader American public of (1) disfavor and condemnation of their religion of Islam, (2) marginalization and exclusion of Muslims, including Plaintiffs, based on the false messaging that Muslims are prone to commit terrorism, (3) the endorsement of all religions over their own, (4) Muslims are outsiders, dangerous, and not full members of the political community, and (5) all non-adherents of Islam are insiders and therefore favored. *McCreary Cnty. v. ACLU*, 545 U.S. 844, 860 (2005); *Moss v. Spartanburg County Sch. Dist. Seven*, 683 F.3d 599, 607 (4th Cir. S.C.

2012); *Catholic League for Religious & Civ. Rights v. City & County of San Francisco*, 567 F.3d 595 (9th Cir. 2009).

112.    Defendants' unlawful actions caused the John and Jane Doe Plaintiffs and other similarly situated non-USC Muslims originating from the Predominantly Muslim Countries harm, and accordingly they are entitled to injunctive and declaratory relief, in addition to all such other relief this Court deems just and proper including costs and attorneys' fees in this action.

113.    The John and Jane Doe Plaintiffs are entitled to declaratory relief, and the issuance of a preliminary and permanent injunction in the form described in the Prayer for Relief below.

WHEREFORE, Plaintiffs request this Honorable Court grant declaratory and injunctive relief in the form described in the Prayer for Relief below, plus all such other relief this Court deems just and proper including costs and attorneys' fees incurred in this action.

## COUNT III
## UNLAWFUL AGENCY ACTION IN VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. §§ 702, 706
## (Jurisdiction under 28 U.S.C. § 1331 and 5 U.S.C. § 702)

### (On behalf of all Plaintiffs)

114.    The foregoing allegations are realleged and incorporated herein.

115.    The actions of Defendants that are required or permitted by the Executive Order, as set forth above, were without observance of procedure required by law, in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(D).

116.   The Revised Order creates a framework that although neutral on its face, maintains the intent of the First Muslim Ban and establishes a case-by-case waiver scheme that allows the unlawful goals and intent of the Muslim Ban – the denial of entry of Muslim into the United States – to still be implemented in full.

117.   Defendants' unique application of the Revised Order to Muslims, insofar as it allows for the (1) suspension of entry of Muslim immigrants and Muslim nonimmigrants originating from the Predominantly Muslim Countries from entering the United States, (2) prohibition of some Muslim immigrants and Muslim nonimmigrants (those who have lawful status but who must obtain or renew their visas) originating from the Predominantly Muslim Countries and who reside lawfully in the United States from engaging in international travel and reentering the United States, and the (3) disparate treatment of immigrants and nonimmigrants originating from the Predominantly Muslim Countries insofar as those persons would have to make a heightened showing and obtain a waiver to secure a visa to the United States.

118.   Defendants' actions as described above are arbitrary and capricious, shock the conscience, violate the decencies of civilized conduct, are so brutal and offensive that they do not comport with the traditional ideas of fair play and decency, lack even a rational relationship to any legitimate government interest, and have substantially burdened and unduly deprived Plaintiffs and similarly situated Muslims their constitutionally protected rights, including their right to be free from discrimination on the basis of religion, the right to be free from condemnation by the government on the basis of their religion, the right to be free from being singled out by the government for disfavored treatment on the basis of their religion, liberty interests in engaging in international travel and returning home in the

United States, their international human rights, their rights to freedom of association, their rights to freedom from false stigmatization and nonattainder, and should be set aside as unlawful pursuant to 5 U.S.C. § 706.

119.    Defendants' above-described unlawful actions that mandate or permit the above-described treatment of the John and Jane Doe Plaintiffs and other similarly situated non-USC Muslims originating from the Predominantly Muslim Countries, constitute an adverse action against them motivated by their religious beliefs and practices and an action that targets religious conduct for distinctive treatment, and should be set aside as unlawful pursuant to 5 U.S.C. § 706.

120.    By creating a framework that allows for the implementation of a Muslim Ban – the denial of entry of Muslims into the United States – through a discretionary and nonreviewable waiver process, Defendants have treated them like second-class citizens, and should be set aside as unlawful pursuant to 5 U.S.C. § 706.

121.    By preventing the student John Doe Plaintiffs and other similarly situated non-USC Muslims originating from the Predominantly Muslim Countries lawfully residing in the United States from engaging in international travel and returning home in the United States without risking forfeiting their F-1 status and jeopardizing their education, Defendants have treated them like second-class citizens, and should be set aside as unlawful pursuant to 5 U.S.C. § 706.

122.    Moreover, by subjecting Muslims originating from the Predominantly Muslim Countries to a discretionary and nonreviewable waiver process to obtain a visa, including family-based visas, solely based on their national origin, Defendants have treated them like second-class citizens, and should be set aside as unlawful pursuant to 5 U.S.C. § 706.

123.    Defendants' above-described conduct was prompted or substantially caused by Plaintiffs' and such other similarly situated Muslims' religious identity, and should be set aside as unlawful pursuant to 5 U.S.C. § 706.

124.    Defendants have deprived and continue to deprive Plaintiffs and similarly situated Muslims their right to be free from religious discrimination in violation of the Establishment Clause to the First Amendment to the United States Constitution by issuing the Revised Order whose purpose and effect is to discriminate on the basis of religion, and should be set aside as unlawful pursuant to 5 U.S.C. § 706.

125.    Defendant Trump's First Muslim Ban imposes upon Islam—the religion to which all of the Plaintiffs belong—the stigma of government disfavor.  This condemnation, which has been broadcast to the general public pursuant to the First Muslim Ban, signals to Plaintiffs' fellow citizens that their faith is uniquely threatening and dangerous insofar as it is the only religion singled out for disfavored treatment, and should be set aside as unlawful pursuant to 5 U.S.C. § 706.

126.    Defendants' actions also not narrowly tailored insofar as they are entirely and demonstrably ineffectual and obvious alternatives exist, and should be set aside as unlawful pursuant to 5 U.S.C. § 706.

127.    Defendants' actions lack a compelling interest insofar as their true purpose is to ban Muslims originating from these Predominantly Muslim Countries from entering the United States based solely on their religious beliefs, and should be set aside as unlawful pursuant to 5 U.S.C. § 706.

128.    Imposition of such a burden is not in furtherance of a compelling government interest nor is it the least restrictive means of furthering any governmental interest, compelling or otherwise, and should be set aside as unlawful pursuant to 5 U.S.C. § 706.

129.    Defendants' above-described actions have a discriminatory effect upon and disparately impact the John and Jane Doe Plaintiffs and similarly situated non-USC Muslims originating from the Predominantly Muslim Countries, and not non-USCs of other faiths, and should be set aside as unlawful pursuant to 5 U.S.C. § 706.

130.    The actions of Defendants, as set forth above, are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; and without observance of procedure required by law, and should be set aside as unlawful pursuant to 5 U.S.C. § 706(A)-(D).

131.    Defendants' Revised Order violates 8 U.S.C. § 1152(a)(1)(A), which states that "no person shall receive any preference or priority or be discriminated against in the issuance of an immigrant visa because of the person'…nationality."

132.    Defendants' Revised Order violates Section 1182(a)(3)(B) of the INA which creates a statutory scheme that the Defendants must utilize to exclude persons from the United States based on terrorism-related concerns.  This Section directs the Executive Branch to deny visas to persons who have "engaged in a terrorist activity," "incited terrorist activity," who are a "representative…of a terrorist organization" or a "group that endorses or espouses terrorist activity, who are members "of a terrorist organization," "endors[e] or espous[e] terrorist activity."   This complex statutory scheme indicates that Congress anticipated that the Executive Branch would make immigration decisions that have national

48

security implications and that Congress had in mind exactly how it wanted the Executive Branch to exercise the authority delegated to it.

133.    Defendants' Revised Order violates Section 1182(a)(3)(B)(i)(ii) of the INA, which only allows the Executive Branch to deny a visa to a person who "is engaged in or is likely to engage after entry in any terrorist activity" if there is at least "reasonable ground" for such a conclusion.

134.    Plaintiffs have suffered and will continue to suffer an ongoing concrete harm and spiritual and psychological consequences since the initial announcement of the "Muslim Ban" as a result of the Defendants having sent a message to the broader American public of (1) disfavor and condemnation of their religion of Islam, (2) marginalization and exclusion of Muslims, including Plaintiffs, based on the false messaging that Muslims are prone to commit terrorism, (3) the endorsement of all religions over their own, (4) Muslims are outsiders, dangerous, and not full members of the political community, and (5) all non-adherents of Islam are insiders and therefore favored. *McCreary Cnty. v. ACLU*, 545 U.S. 844, 860 (2005); *Moss v. Spartanburg County Sch. Dist. Seven*, 683 F.3d 599, 607 (4th Cir. S.C. 2012); *Catholic League for Religious & Civ. Rights v. City & County of San Francisco*, 567 F.3d 595 (9th Cir. 2009).

135.    Defendants' unlawful actions caused Plaintiffs and similarly situated Muslims harm, and accordingly they are entitled to injunctive and declaratory relief, in addition to all such other relief this Court deems just and proper including costs and attorneys' fees in this action.

136.    Plaintiffs are entitled to declaratory relief, and the issuance of a preliminary and permanent injunction in the form described in the Prayer for Relief below.

WHEREFORE, Plaintiffs request this Honorable Court grant declaratory and injunctive relief in the form described in the Prayer for Relief below, plus all such other relief this Court deems just and proper including costs and attorneys' fees incurred in this action.

## COUNT V
## VIOLATION OF THE IMMIGRATION AND NATIONALITY ACT

### (On behalf of all Plaintiffs)

137.    The foregoing allegations are realleged and incorporated herein.

138.    Defendant Trump does not have the authority to give any person preference or priority or to discriminate in the issuance of an immigrant visa on the basis of a "person's race, sex, nationality, place of birth, or place of residence," and therefore the First Muslim Ban is an unconstitutional overreach in violation of Section 202(a)(1) of the INA.

139.    The Executive Order on its face mandates discrimination against those who apply for immigrant visas on the basis of their nationality, place of birth, and/or place of residence in violation of Section 1152(a)(1)(A).

140.    Defendant Trump does not have the authority to suspend the entry of all foreign nationals from the six countries on the basis of terrorism-related concern, because Congress has already created a statutory scheme for establishing an evidentiary threshold for making such determinations and otherwise directing the executive branch to exercise discretion in a particular manner in violation of Section 1182(a)(3)(B) of the INA.

141.    The First Muslim Ban is a factually baseless, biased and bigoted effort to discriminate against a targeted group that even if one would to accept its purported basis, is not in any way related to the First Muslim Ban's purported goals.

142.     Further, the First Muslim Ban is an irrational and arbitrary use of power, and as such is an unconstitutional executive overreach.

## Prayer for Relief

WHEREFORE, Plaintiffs respectfully request:

1.     A speedy hearing of this action under Rule 57 of the Federal Rules of Civil Procedure;

2.     A declaratory judgment that Defendants' Revised Order violates the First and Fifth Amendments to the United States Constitution and the Administrative Procedure Act, and is unlawful and invalid;

3.     A declaratory judgment that Defendants' Revised Order is an unconstitutional overreach in violation of Section 202(a)(1) of the INA;

4.     An injunction that requires Defendants to remedy the constitutional violations identified above, including prohibiting Defendants from engaging in the following:

(1)    implementing or enforcing any portion of the Revised Order;

(2) requiring visa applications filed by foreign nationals originating from the Predominantly Muslim Countries to be subjected to case-by-case waivers such that applicants are denied their visa applications on the basis of religion or national origin, pursuant to the unconstitutional terms specified in the Revised Order;

(3) prohibiting student visa holders originating from the Predominantly Muslim Countries and who lawfully reside in the United States from engaging in international travel and renewing their student visas to reenter the United States and continue their education, pursuant to the unconstitutional terms specified in the Revised Order;

(4) prohibiting foreign nationals originating from the Predominantly Muslim Countries and who lawfully reside in the United States from renewing their lawful immigrant or nonimmigrant status, pursuant to the unconstitutional terms specified in the Revised Order; and,

(5) otherwise embedding policies and processes within the immigration and visa process that discriminate against or disfavor Islam or Muslims;

5. A trial by jury;

6. An award of attorneys' fees, costs, and expenses of all litigation, pursuant to 28 U.S.C. § 2412; and,

7. Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

NOW COME Plaintiffs, by and through their undersigned counsel, and hereby demand trial by jury of the above-referenced causes of action.

Respectfully submitted,

THE LAW OFFICE OF GADEIR ABBAS

BY:  /s/ Gadeir Abbas
GADEIR I. ABBAS
Attorney for Plaintiff
1155 F Street NW, Suite 1050
Washington, D.C. 20004
Telephone: (720) 251-0425
Fax: (720) 251-0425
Email: gadeir.abbas@gmail.com

*Licensed in Virginia, not in D.C.*
*Practice limited to federal matters*

COUNCIL ON AMERICAN-ISLAMIC
RELATIONS

BY:      /s/ Lena Masri
LENA F. MASRI (P73461)
Attorney for Plaintiff
National Litigation Director
453 New Jersey Ave, SE
Washington, DC 20003
Phone: (202) 488-8787

AKEEL & VALENTINE, PLLC

BY:      /s/ Shereef Akeel
SHEREEF H. AKEEL (P54345)
Attorney for Plaintiffs
888 W. Big Beaver Rd., Ste. 910
Troy, MI 48084
Phone: (248) 269-9595
shereef@akeelvalentine.com

Dated: March 13, 2017